BÚZZETTA CONSTRUCTION CORP., ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3738-86, 3739-86,    Filed March 27, 1989.
3740-86, 3741-86.

*Melvin Paradise* and *Timothy P. Fisher,* for the petitioners.

*Diane R. Mirabito,* for the respondent.

COHEN, *Judge:* Respondent determined the following deficiencies in petitioners' Federal income taxes:

| Petitioners | Taxable year | Deficiency |
| --- | --- | --- |
| Buzzetta Construction Corp. | 3/31/78 | $4,178 |
| Docket No. 3738-86 | 3/31/79 | 31,591 |
| | 3/31/81 | 434 |
| Anthony and Adamina Buzzetta | 1979 | 36,760 |
| Docket No. 3739-86 | 1980 | 27,831 |
| | 1981 | 9,764 |
| Richard and Marie Marcantonio | 1978 | 4,378 |
| Docket No. 3740-86 | 1979 | 38,050 |
| | 1980 | 29,409 |
| | 1981 | 4,989 |
| Vicenzo and Maria Buzzetta | 1978 | 3,749 |
| Docket No. 3741-86 | 1979 | 38,477 |
| | 1980 | 32,346 |
| | 1981 | 11,902 |

After concessions, the issues for decision are whether respondent abused his discretion in disqualifying the profit-sharing plan of Buzzetta Construction Corp. (the corporation) for years in which contributions were made in excess of the limitations of section 415(c)(1),[2] or in revoking the

---

[1]Cases of the following petitioners are consolidated herewith: Anthony and Adamina Buzzetta, docket No. 3739-86; Richard and Marie Marcantonio, docket No. 3740-86; and Vincenzo and Maria Buzzetta, docket No. 3741-86.

[2]All section references are to the Internal Revenue Code as amended and in effect during the years in issue.

favorable determination letter previously issued to the corporation.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Other facts are admitted in petitioners' responses to respondent's request for admissions and petitioners' answers to respondent's interrogatories.

Petitioner Buzzetta Construction Corp. (the corporation) was a corporation with its principal office located in Woodbury, New York, at the time it filed its petition. Anthony and Adamina Buzzetta, Richard and Marie Marcantonio, and Vincenzo and Maria Buzzetta resided in New York when they filed their respective petitions.

Petitioners Anthony Buzzetta, Vincenzo Buzzetta, and Richard Marcantonio were the officers and directors of the corporation. The corporation was a small, family-owned construction business laying water mains for the City of New York.

In March 1977, the corporation amended its previously adopted defined contribution pension plan and adopted a defined contribution profit-sharing plan and trust. The two plans covered all of the corporation's employees with 1 year of service, but excluded any employee whose wages or conditions of employment were subject to collective bargaining. The plans provided for discretionary contributions by the corporation for the benefit of all covered employees up to the lesser of $25,000 or 25 percent of the employee's compensation.

The plans also permitted increased annual contributions to correspond to increases in statutory dollar limitations. The corporation and the plans adopted and filed their respective Federal tax returns on a fiscal year basis beginning April 1 and ending March 31 during all years in issue.

In 1977, when the profit-sharing plan was established, the corporation's three officers/directors and petitioner Marie Marcantonio, the corporation's bookkeeper, were the only salaried employees covered by the plans. All of the remaining employees were union members who were covered under

a variety of union-negotiated pension plans arrived at through collective bargaining.

The corporation applied for determinations from the Internal Revenue Service (IRS) that the pension and profit-sharing plans were qualified plans under the provisions of section 401(a) and were exempt from taxation under section 501(a). By letters dated November 8, 1977, respondent determined that both plans were qualified under section 401(a) and exempt under section 501(a).

The plans continued in effect without amendment from 1977 until 1982, when the plans were amended to comply with final regulations adopted under the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 1974-3 C.B. 1.

Petitioners delegated plan administration to an independent certified public accountant who acted as plan administrator for both plans for the years in issue. In this capacity, the plan administrator determined the amounts to be contributed annually on behalf of each employee to the corporation's plans. The plan administrator then instructed the corporation's bookkeeper to make the appropriate contributions and advised the corporation's officers and directors of his actions.

For fiscal years 1977 and 1978, the corporation made no discretionary contributions to its newly adopted profit-sharing plan. For each of the subsequent fiscal years, the plan administrator calculated the total annual pension and profit-sharing plan contributions by simply multiplying each employee's total compensation by 25 percent. In using this formula to determine total plan contributions for fiscal years 1979 and 1980, the plan administrator inadvertently exceeded the statutorily imposed dollar limitation for three of the four participating employees.

Each of the three corporate officers received the same salary. The corporation made the following contributions on behalf of each of its officers for the fiscal years 1979, 1980, and 1981:

| Year | Salary | Total plan contributions | Maximum allowable contributions | Excess contributions |
|------|--------|--------------------------|----------------------------------|----------------------|
| 1979 | $238,120 | $59,530 | $32,700 | $26,830 |
| 1980 | 156,454 | 39,113 | 36,875 | 2,238 |
| 1981 | 82,597 | 20,648 | 20,649 | - - - |

Of the above contributions, 10 percent was designated as a pension plan contribution, and 15 percent was designated as a profit-sharing plan contribution. The total excess contributions were thus $80,490 for 1979 and $6,715 for 1980. The corporation also contributed $2,275 in each of said fiscal years on behalf of its only other covered employee, petitioner Marie Marcantonio, based on her annual salary of $9,100.

In May 1982, during an audit of the corporation's income tax returns, the IRS discovered that the corporation's plan contributions for three of its four participants exceeded the maximum dollar limitations for fiscal years 1979 and 1980.

On December 3, 1982, the plan administrator met with IRS representatives. At that meeting, the IRS representatives offered the corporation an opportunity to maintain the qualified status of the plans by amending the plans to create a suspense account for the excess plan contributions. As a condition to retaining the qualified status of the plans, the IRS agents also requested that the individual petitioners file amended tax returns including in their taxable income the amount of the excess contributions made on their behalf.

Immediately following the meeting, the plan administrator received oral approval from the individual petitioners acting as the corporation's officers and directors and established the required suspense account. The corporation did not, however, formally amend the plan, notwithstanding repeated warnings by the IRS to the plan administrator. Similarly, the individual petitioners did not file amended tax returns for the years in issue. During this period of time, the plan administrator was preoccupied with personal tragedies.

For the subsequent plan years 1982 and 1983, the plan administrator withdrew funds from the suspense account and reallocated those funds to the participants' accounts. The corporation's deductions for contributions to its pension and profit-sharing plans for fiscal years 1982 and 1983 were correspondingly reduced by the amounts of the reallocations. Additional contributions in each year were made from corporation profits and claimed as deductions.

On February 24, 1983, the IRS issued final adverse determination letters retroactively revoking the qualified status of both plans, effective for the fiscal year beginning April 1, 1978. The reasons given for revocation of the plans' qualified status were that the plans had not been operating according to their provisions, as approved in the favorable determination letters, and also that the plans failed "to qualify under IRC section 401(a)(16) by providing benefits in excess of the limitations of IRC section 415(c)(1)."

By statutory notices of deficiency dated December 26, 1985, respondent determined that, because both the pension and profit- sharing plans' qualified status had been revoked, the corporation's deductions for contributions were disallowed to the extent they exceeded the vested interest of plan participants. Respondent also determined that the individual petitioners had additional taxable income equal to the vested portion of the contributions made by the corporation on their behalf to the disqualified plans. Respondent has subsequently agreed to reinstate the qualified status of the pension plan, effective for all years in issue and all succeeding years, and to readjust the taxable income of the individuals accordingly. (See sec. 415(g) and sec. 1.415-9(b)(3), Income Tax Regs.)

OPINION

Section 401(a) lists various requirements that must be met by a trust forming part of a pension or profit-sharing plan in order for that trust to be eligible for favored tax treatment under various sections of the Internal Revenue Code. Section 401(a)(16) provides that "A trust shall not constitute a qualified trust under this section if the plan of which such trust is a part provides for benefits or contributions which exceed the limitations of section 415."

Section 415(a)(1)(B) provides that a trust which is part of a pension or profit-sharing plan will not constitute a qualified trust under section 401(a) if, in the case of a defined contribution plan, contributions exceed the limitations set forth in section 415(c)(1). The applicable limitation of section 415(c)(1) for taxable years beginning after December 31, 1975, was the lesser of $25,000 or 25 percent of a participant's compensation. The $25,000 limitation, how-

ever, was to be adjusted annually, under section 415(d)(1), for increases in the cost of living "in accordance with regulations prescribed by the Secretary." For the plan years ending in 1979 and 1980, the adjusted maximum dollar limitations were $32,700 and $36,875, respectively.

If a trust qualifies under section 401(a), contributions made on behalf of employees are not includable in the employees' incomes until the year those amounts are actually distributed or made available to them. Sec. 402(a)(1). If a trust fails to qualify under section 401(a), however, employer contributions are included in the employees' incomes in accordance with section 83. Sec. 402(b).

In order for a plan to be qualified, both its terms and its operations must meet the statutory requirements. *Ludden v. Commissioner,* 620 F.2d 700, 702 (9th Cir. 1980), affg. 68 T.C. 826 (1977). It is undisputed that, for fiscal years 1979 and 1980, the corporation's contributions to its profit-sharing plan exceeded the maximum contribution limitations of section 415.

Respondent takes the position that the plan was not qualified during fiscal years 1979 and 1980 because the contributions actually made in those years exceeded the maximum dollar limitations of section 415. Respondent's position is based on the clear meaning of section 415(a)(1)(B), and we agree with it. Petitioners, however, argue that respondent abused his discretion in revoking the plan's qualified status retroactively and in not allowing post-audit corrective measures to cure the overfunding defect.

Despite the excess plan contributions in issue here, no employee of the corporation was deprived of plan benefits. Respondent does not claim that the plan discriminated in favor of corporation officers, directors, or highly compensated employees. Rather, respondent stipulated that the individual petitioners, as officers and directors of the corporation and trustees of the plan, operated the plan in good faith. The plan administrator's testimony was credible, and we accept his statements that the overfunding errors were inadvertent and that the excess contributions were not made deliberately with the intent to obtain income tax deductions in excess of those to which the corporation was

entitled. Respondent has stipulated that the corporation's profit-sharing plan as written met the requirements of section 401(a).

*Section 1.415-6(b)(6)*

Regulations specifically covering retirement plans provide corrective measures for overfunding defects in defined contribution plans. Specifically, section 1.415-6(b)(6), Income Tax Regs., provides four methods for handling excess annual contributions as follows:

(6) *Excess annual additions.* If as a result of the allocation of forfeitures, a reasonable error in estimating a participant's annual compensation, or under other limited facts and circumstances which the Commissioner finds justify the availability of the rules set forth in this subparagraph, the annual additions under the terms of a plan for a particular participant would cause the limitations of section 415 applicable to that participant for the limitation year to be exceeded, the excess amounts shall not be deemed annual additions in that limitation year if they are treated in accordance with any one of the following subdivisions:

(i) The excess amounts in the participant's account must be allocated and reallocated to other participants in the plan. However, if the allocation or reallocation of the excess amounts pursuant to the provisions of the plan causes the limitations of section 415 to be exceeded with respect to each plan participant for the limitation year, then these amounts must be held unallocated in a suspense account. * * *

(ii) The excess amounts in the participant's account must be used to reduce employer contributions for the next limitation year (and succeeding limitation years, as necessary) for that participant if that participant is covered by the plan of the employer as of the end of the limitation year. * * *

(iii) The excess amounts in the participant's account must be held unallocated in a suspense account for the limitation year and allocated and reallocated in the next limitation year to all of the participants in the plan in accordance with the rules provided in subparagraph (6)(i) of this paragraph. * * *

(iv) Notwithstanding subdivisions (i), (ii) or (iii) of this subparagraph, the plan may provide for the return of employee contributions (whether voluntary or mandatory), to the extent that the return would reduce the excess amounts in the participant's account. * * *

The Commissioner is required to abide by regulations reasonably based on statute, and his failure to do so will amount to an abuse of discretion. *Lansons, Inc. v. Commissioner*, 622 F.2d 774, 776 (5th Cir. 1980), affg. 69 T.C. 773

(1978). When reviewing discretionary administrative acts, however, this Court may not substitute its judgment for that of the Commissioner. The exercise of discretionary power will not be disturbed unless the Commissioner has abused his discretion, i.e., his determination is unreasonable, arbitrary, or capricious. Whether the Commissioner has abused his discretion is a question of fact, and petitioner's burden of proof of abuse of discretion is greater than that of the usual preponderance of the evidence. *Estate of Gardner v. Commissioner,* 82 T.C. 989, 1000 (1984); *Oakton Distributors, Inc. v. Commissioner,* 73 T.C. 182, 188 (1979).

Respondent argues that this regulation does not allow for retroactive correction and contends that this relief is available only when the excess contributions are placed in a suspense account in the year at issue and not in some later year. Further, respondent argues that section 1.415-6(b)(6), Income Tax Regs., implies that, in order for this relief to be available, a plan must be amended in writing to allow for the creation of a suspense account to hold the excess contributions.

Petitioners argue that the regulation does not prohibit retroactive correction and by its nature implies that such corrective actions would necessarily take place in years subsequent to the year in which the overfunding occurred. Petitioners also contend that the regulation does not require that the plan be amended in writing to provide for a suspense account. Petitioners argue that the plan administrator's inadvertent misapplication of the section 415(c)(1) contribution formula is the type of "other limited facts and circumstances" that justify the availability of the corrective measures provided by section 1.415-6(b)(6), Income Tax Regs.

We need not here decide whether respondent's interpretation of the limited scope of the regulation is correct. Petitioners have not persuaded us that they are entitled to the benefits of that regulation. The excess contributions apparently resulted from ignorance of the law and of the plan provisions. The two situations specifically described in section 1.415-6(b)(6), Income Tax Regs., commonly result from inadequate facts known at the time of making a contribution or from mathematical errors. Relief is other-

wise afforded only in "limited facts and circumstances." Respondent was not clearly required by that regulation to allow correction in this case. He did offer relief resembling that available under the regulations on the additional condition that the individual petitioners file amended returns. The conditions were not met, and it was not an abuse of discretion to disqualify the plan.

## Revocation of Favorable Determination Letter

The Supreme Court has held that the Commissioner has broad discretion under section 7805(b) in deciding whether to revoke a ruling retroactively, and that his determination is reviewable by the courts only for abuse of that discretion. *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 184 (1957); *Virginia Education Fund v. Commissioner*, 85 T.C. 743, 752 (1985), affd. 799 F.2d 903 (4th Cir. 1986). The Commissioner, however, has limited his own discretion to revoke retroactively a favorable ruling. Statement of Procedural Rules, 26 C.F.R. sec. 601.201(l)(5) (1982), provides:

(5) Except in rare or unusual circumstances, the revocation or modification of a ruling will not be applied retroactively with respect to the taxpayer to whom the ruling was originally issued or to a taxpayer whose tax liability was directly involved in such ruling if (i) there has been no misstatement or omission of material facts, (ii) the facts subsequently developed are not materially different from the facts on which the ruling was based, (iii) there has been no change in the applicable law, (iv) the ruling was originally issued with respect to a prospective or proposed transaction, and (v) the taxpayer directly involved in the ruling acted in good faith in reliance upon the ruling and the retroactive revocation would be to his detriment. * * *

Respondent contends that overfunding of a plan constitutes a material change in the facts upon which the profit-sharing plan's favorable ruling was based, and therefore petitioners are not entitled to rely on the relief provision of Statement of Procedural Rules, 26 C.F.R. sec. 601.201(1)(5)(ii). The profit-sharing plan, as submitted to IRS to obtain the favorable determination letter, contained a provision requiring that contributions not exceed the section 415 limits. That the corporation made plan contributions in excess of the section 415 maximum dollar limita-

tions was clearly a change in the facts upon which the plan's tax-exempt ruling was based. The question, then, is whether this operational defect was material.

Petitioners contend that because the overfunding and excess deductions were offset in later years by lower contributions and deductions, the net effect was not material. They also argue that because the plan did not discriminate in favor of its officers, shareholders, or highly compensated employees and because the operational errors were voluntarily corrected, respondent abused his discretion in retroactively disqualifying the plan.

In determining whether an inadvertent operational error in plan administration should lead to disqualification, prior cases have found a critical factor to be whether the error discriminated against low-salary employees in favor of officers, shareholders, or highly compensated employees. In *Myron v. United States,* 382 F. Supp. 590 (C.D. Cal. 1974), affd. 550 F.2d 1145 (9th Cir. 1977), five employees were excluded from an employee plan, and contributions were made only on behalf of the corporation's sole shareholder. The District Court found that, although the exclusion was inadvertent, the error justified disqualification. In affirming this decision, the Court of Appeals for the Ninth Circuit agreed that even an inadvertent failure in coverage could be a proper basis for disqualification.

Under a similar set of circumstances, this Court also held that the inadvertent failure of a corporation to contribute to pension and profit-sharing plans on behalf of its only employee other than the shareholders and officers who were highly compensated caused the plans to fail to qualify under section 401(a). *Ludden v. Commissioner,* 68 T.C. 826 (1977), affd. 620 F.2d 700 (9th Cir. 1980). In *Ludden,* however, we recognized that not all operational errors would automatically result in disqualification. We stated:

We do not read the *Myron* case as holding that under no circumstances could an operational defect be overlooked or that absolute letter-perfect administration of employee plans is a prerequisite to qualification. When the deviation from the terms of the plan results in no harm to anyone and is voluntarily corrected by the parties themselves, it might be that the deviation would not be sufficiently substantial to disqualify the plan. When, however, as in *Myron* and in this case, benefits are denied every

nonmember of the prohibited group, disqualification should result. [*Ludden v. Commissioner,* 68 T.C. at 832-833. Fn. ref. omitted.]

In affirming the *Ludden* decision, the Court of Appeals for the Ninth Circuit agreed with the Tax Court to reserve the question: "whether retroactive reallocation of the contributions would so well cure the inadvertent operational error that it would be an abuse of discretion for the Commissioner not to recognize the 1972 plans as qualified in the event such a reallocation was made." *Ludden v. Commissioner,* 620 F.2d at 702.

The question of retroactive disqualification of a plan due to operational errors arose again in *Lansons, Inc. v. Commissioner,* 69 T.C. 773 (1978), affd. 622 F.2d 774 (5th Cir. 1980). Although the plan had inadvertently listed one employee as a participating employee when in fact she was too young to be eligible, this Court did not consider the error to be such a material misstatement of fact as to justify revoking the plan's favorable ruling. In concluding that respondent abused his discretion under section 7805(b), we found respondent's revocation of his ruling and disqualification of a plan to be arbitrary and capricious because, in part, there had been no misstatement or omission of material facts.

In affirming the Tax Court's decision, the Court of Appeals for the Fifth Circuit found that the inadvertent inclusion of an ineligible employee was not a material error, and held "that when a taxpayer has put substantial good faith reliance upon an IRS determination of its tax position and when a retroactive revocation of that determination will produce an inordinate adverse effect, the Commissioner's failure to abide strictly by his own regulations limiting retroactive revocation of a favorable ruling amounts to an abuse of discretion." *Lansons, Inc. v. Commissioner,* 622 F.2d at 778. See also *Boggs v. Commissioner,* 784 F.2d 1166 (4th Cir. 1986), remanding 83 T.C. 132 (1984).

The prior cases petitioners rely on may be analogous in demonstrating that some but not all operating defects are material. These cases alone, however, do not tell us whether funding defects, as contrasted to discriminatory coverage provisions, are material. In *William Bryen Co. v. Commissioner,* 89 T.C. 689 (1987), we held that an employer's

intentional advance contributions to a target benefit plan violated the requirement of section 1.401-1(b)(1)(i), Income Tax Regs., that contributions be "fixed without being geared to profits," and the pension plan was therefore not qualified under section 401(a). In *Bryen,* however, we did not reach the question presented in the instant case, whether unintentional overfunding of a plan would also result in the disqualification of the plan. Therefore, we look to the legislative history to determine the role of funding limitations for qualified retirement plans.

Petitioners point out that Congress intended deductions for employer contributions as an incentive to establish employee plans. They rely on a portion of the legislative history, H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 236, 243, which offered the following explanation for private pension tax reform:

> One of the most important matters of public policy facing the nation today is how to assure that individuals who have spent their careers in useful and socially productive work will have adequate incomes to meet their needs when they retire. This legislation is concerned with improving the fairness and effectiveness of qualified retirement plans in their vital role of providing retirement income. In broad outline, the objective is to increase the number of individuals participating in employer-financed plans; to make sure to the greatest extent possible that those who do participate in such plans actually receive benefits and do not lose their benefits as a result of unduly restrictive forfeiture provisions or failure of the pension plan to accumulate and retain sufficient funds to meet its obligations; and to make the tax laws relating to qualified retirement plans fairer by providing greater equality of treatment under such plans for the different taxpayer groups concerned.

For these reasons, petitioners contend that automatic retroactive disqualification for operational errors is a "Draconian approach" that is not sanctioned by either the statute or the regulations.

Respondent argues, however, that section 415 places restrictions on employers' deductions for contributions to employee plans because deferred compensation plans are subject to abuse of tax favored treatment. Specifically, respondent cites the following portion of the House report, H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 236, 270:

> your committee has concluded that it is not in the public interest to make the substantial favored tax treatment associated with qualified

retirement plans available without any specific limitation as to the size of the contributions or the amount of benefits that can be provided under such plans. The fact that present law does not provide such specific limitations has made it possible for extremely large contributions and benefits to be made under qualified plans for some highly paid individuals. While there is, of course, no objection to large retirement benefits in themselves, your committee believes it is not appropriate to finance extremely large benefits in part at public expense through the use of the special tax treatment. Moreover, the fact that there are no specific limits on the size of the contributions or benefits that may be made under qualified plans on behalf of highly paid employees discriminates against the self-employed whose contributions or benefits under H.R. 10 plans are limited by law. For this reason, your committee has provided specific limitations on the amount of contributions and benefits that can be provided for any one individual under a qualified plan. These limitations, which apply to both employees and self-employed people under qualified plans, have been designed to avoid abuse of the favored tax treatment to finance extremely large pensions. However, the limitations are generous enough to permit substantial retirement benefits which are adequate judged from any reasonable standard.

After review of the analogous cases and the legislative history, we conclude that the operational errors in the instant case were a material change in the facts on which the plan's favorable ruling was based. The limitations on contributions for individuals and on attendant deductions from taxable income represent the legislative balancing of the desirability of retirement plans against the cost to the public treasury. See *Feichtinger v. Commissioner,* 80 T.C. 239, 249-250 (1983). They are among the clearest and most central requirements for favorable tax treatment and cannot be disregarded—deliberately or inadvertently.

The amounts in question here ($80,490 and $6,715) were not de minimis, and in a quantitative sense they were material. The error occurred in more than one year, and occurred in the first two years for which contributions to the profit-sharing plan were made. Partial correction after disclosure of an error during audit cannot be given favored treatment on the ground that it was "voluntary." Accordingly, we cannot say that respondent's retroactive revocation of the favorable ruling was unreasonable, arbitrary, or capricious.

To reflect the foregoing,

*An order for further argument will be issued.*

Reviewed by the Court.

NIMS, PARKER, WHITAKER, KÖRNER, HAMBLEN, CLAPP, SWIFT, JACOBS, GERBER, WRIGHT, WILLIAMS, WELLS, and COLVIN, *JJ.*, agree with the majority opinion.

---

CHABOT, *J.*, concurring in the result: I agree with much of the majority's opinion and with the majority's result. However, I disagree with the majority's analysis of the retroactive revocation of the favorable determination letter.

Section 415(a)(1)(B) provides as follows:

SEC. 415. LIMITATIONS ON BENEFITS AND CONTRIBUTIONS UNDER QUALIFIED PLANS.

(a) GENERAL RULE.—

(1) TRUSTS.—A trust which is part of a pension, profit-sharing, or stock bonus plan shall not constitute a qualified trust under section 401(a) if—

\* \* \* \* \* \* \*

(B) in the case of a defined contribution plan, contributions and other additions under the plan with respect to any participant for any taxable year exceed the limitation of subsection (c), \* \* \*

This provision, by its own terms, applies automatically and depends on the facts as they occur year-by-year. Although we generally test the retroactivity of revocations of favorable determination letters under an abuse-of-discretion standard, section 415(a)(1)(B) cannot be tested on any basis other than after-the-fact, and so the loss of tax-qualified status because of a violation of that statute can only be on a retroactive basis. Respectfully, I suggest that the discussion of abuse of discretion as to retroactivity of the revocation is inappropriate regarding violations of section 415(a)(1)(B).

The provisions of section 1.415-6(b)(6), Income Tax Regs., raise a different abuse-of-discretion issue. The lead-in language of subparagraph (6) provides for automatic relief from

disqualification in some cases and discretionary relief in other cases. The first circumstance—allocation of forfeitures—appears to be automatic; i.e., the amounts can be calculated and it can be objectively determined whether an excess addition results from the allocation of forfeitures. The second circumstance—reasonable error in estimating annual compensation—may well involve standards of reasonableness; that issue is not before us in the instant case. The third circumstance—"other limited facts and circumstances which the Commissioner finds justify the availability of the rules set forth in this subparagraph"—is clearly discretionary and is before us.

It is up to respondent to decide whether he will find that relief is justified, and to set reasonable conditions for granting relief. It is then up to us to review respondent's determination on an abuse-of-discretion basis. Respondent's insistence that the plan be amended to put in place an automatic correction system is not unreasonable. Indeed, it clearly would have been the prudent thing for the employer to do, as a fail-safe measure, before the years in issue. The employer failed to comply with respondent's reasonable conditions for exercising his discretion to "let the employer off the hook".

Respondent's conditions were reasonable, and that should end the matter.

Respectfully, I suggest that the opinion tends to confuse the issue by focusing on the retroactive revocation cases, which generally have involved a degree of subjectivity and highly imprecise standards. If respondent were mistakenly to issue a determination letter approving a plan that provided for excessive contributions or benefits in violation of section 415, and the taxpayer were to rely on this approval and so were to make excessive additions or cause excessive benefits to be paid, then a retroactive revocation might arguably be subject to an abuse of discretion review. However, that did not happen in the instant cases. In the instant cases, the statute is clear and reasonably precise; as a practical matter, the statute's text seems to require retroactive revocation. I submit that, under the text of section 415, the majority's conclusion—"that the operational errors in the instant case were a material change in

the facts on which the plan's favorable ruling was based" (majority opinion at 653)—is irrelevant.

PARR, RUWE, and WHALEN, *JJ.,* agree with this concurring opinion.