T.C. Memo. 1996-36


UNITED STATES TAX COURT


ORVIL M. WEDDEL AND KAREN L. WEDDEL, Petitioners v. COMMISSIONER
OF INTERNAL REVENUE, Respondent


Docket No. 18187-92.                    Filed January 30, 1996.


Robert D. Forrester, for petitioners.

Douglas R. Fortney, for respondent.


MEMORANDUM OPINION

WRIGHT, Judge:  Respondent determined a deficiency in
petitioners' Federal income tax for taxable year 1988 in the
amount of $21,486.55.

Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year at issue, and
all Rule references are to the Tax Court Rules of Practice and

Procedure. After concessions by both parties, which will be given effect in the Rule 155 computation, the issues for decision for taxable year 1988 are:

(1) Whether distributions received by petitioners in the amount of $74,813 from their defined contribution profit-sharing plan are includable in gross income as determined by respondent. We hold that they are.

(2) Whether respondent abused her discretion in failing to offer to enter into a closing agreement with petitioner Orvil Weddel's employer, in accordance with the Internal Revenue Service Employee Plans Closing Agreements Pilot Program, in order to avoid plan disqualification under section 401(a). We hold that respondent did not abuse her discretion.

Petitioners resided in Amarillo, Texas, at the time the petition was filed in the instant case. Petitioners' joint Federal income tax return for taxable year 1988 was timely filed.

Mr. Weddel is employed as a machinery operator at Ace Machine Co. (Ace), a Texas corporation. Mr. Weddel began working for Ace in 1972. Mrs. Weddel was employed by Ace; however, the dates of her employment are not clear in the record. Ace is involved in the business of oilfield welding. On June 1, 1977, Ace adopted a defined contribution profit-sharing plan (Plan). The Plan received a favorable determination letter from the Internal Revenue Service (IRS) on November 11, 1977. Mr. Weddel was a participant in the Plan. The trustee of the Plan was an

unrelated third party.  Petitioners were not fiduciaries of the Plan and exercised no authority, control, responsibility, or discretion over its administration or operation.

Petitioners consistently relied on the Plan trustee to handle all required Plan filings, take all steps necessary to maintain the Plan's qualified status, and provide petitioners with pertinent Plan information.  Prior to 1985, petitioners owned no interest in Ace; all issued and outstanding shares were owned by third parties.  In June 1985, petitioners acquired 100 shares of Ace.

The Plan was amended in 1980, changing its eligibility requirements to age 21 and 6 months of service.  The Plan was again amended in 1986, changing the vesting to 4-year "cliff" vesting.  Both amendments were approved by the IRS; no other amendments were made to the Plan.

Effective May 31, 1984, the Plan was frozen, and no further employer contributions were made.  No employee contributions were made to the Plan at any time.  The Plan was terminated effective June 1, 1987.  Ace was adversely affected by the economic hardship faced by the Texas oil industry in the 1980's, and it was for this reason that Ace discontinued making contributions to the Plan.

On behalf of the Plan, the trustee filed a final Form 5500-C, Return/Report of Employee Benefit Plan (with fewer than 100

participants) for fiscal year ending May 31, 1988.  There were five Plan participants at the time the Plan was terminated.

In June 1988, petitioners received two lump-sum distributions from the Plan in the total amount of $74,813, representing petitioners' entire balance to their credit in the Plan.  In July 1988, petitioners timely rolled over the entire amount into nonparticipating flexible premium-deferred annuities at Western National Life Insurance Co.  The annuities are still in place; no withdrawals from or additional contributions to the annuities have been made.

On March 12, 1990, the IRS advised Ace that it proposed to disqualify the Plan for Plan years ending May 31, 1985 through 1987.  On March 14, 1991, Ace received a final revocation letter revoking the Plan's exemption for the above-mentioned Plan years.  The Plan lost its exemption because the Plan was not timely amended to comply with changes in the law resulting from the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494, and the Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426.  Ace has not contested the Plan revocation.

Section 401(a) sets forth the requirements that a trust forming part of a retirement plan such as a pension or profit-sharing plan must meet for the trust to be a qualified trust entitled to receive favorable tax treatment.  Both the employer

adopting such a retirement plan and the employees participating in the plan receive favorable tax treatment.  Income earned by a qualified plan is not subject to taxation while the plan's assets are held in a trust which is tax exempt under section 501(a). Sec. 401(a).  Under section 404(a), the employer, subject to certain limitations, receives an immediate tax deduction for contributions to a qualified plan.  Under section 402(a), employees are not taxed on any employer contributions that are made on their behalf until the benefits are actually distributed to them from the plan.  If the plan does not meet the requirements set forth in section 401(a), however, the earnings of the plan are subject to tax and employer deductions for contributions may be deferred or eliminated.  Moreover, if contributions to an employees' trust are made by an employer during a taxble year for which the trust is not exempt from tax, the employees are taxed on the value of such employer contributions under section 83.  Sec. 402(b).

Respondent determined that the lump-sum distributions received by petitioners from their profit-sharing plan are includable in petitioners' gross income for taxable year 1988 because, at the time of the distributions, the Plan failed to meet the requirements of a "qualified trust" under section 401(a).  See Fazi v. Commissioner, 102 T.C. 695 (1994). Petitioners assert, however, that they are entitled to relief

under the IRS Employee Plans Closing Agreements Pilot Program (CAP Program).

On December 21, 1990, approximately 3 months prior to the issuance of the final revocation letter in the instant case, the IRS introduced the CAP Program. The CAP Program was designed to resolve disputes regarding a plan's qualified status such as plan disqualification due to the failure to timely amend under TEFRA, DEFRA, and REA. The CAP Program was made permanent on October 9, 1991.

The CAP Program is outlined in an internal IRS memorandum dated December 21, 1990. The CAP Program allows plan employers and key district offices of the IRS to resolve cases of plan disqualification in a manner that allows for the continued qualification of a plan. The closing agreement provides for the correction of the disqualifying defect in a plan and the imposition of sanctions on the employer for noncompliance. Under the CAP Program, key district offices were given discretion to enter into closing agreements as a possible alternative to revocation of a plan's qualified status. In entering into such closing agreements, the general procedures to be followed were those set forth in IRM 8(13)10, Closing Agreement Handbook, and in Rev. Proc. 68-16, 1968-1 C.B. 770.

Under the CAP Program, the closing agreement procedure requires the Employee Plans agent (EP agent) to notify the plan sponsor of any proposals to disqualify a plan. The EP agent is

then required to advise the sponsor of the existence of the CAP Program and the possibility of using a closing agreement to avoid plan disqualification. In addition to retroactive and prospective correction of the plan under the CAP Program, the party or parties to the closing agreement must agree to make a nondeductible payment to the U.S. Treasury in order to avoid having the plan's qualified status revoked. The maximum amount to be paid under the CAP Program equals the total tax resulting from (1) the disallowance of the plan sponsor's deduction for contributions to the plan, (2) the treatment of the plan's trust income as taxable income, and (3) the inclusion, in the gross income of the participants, of their appropriate shares of plan contributions as determined under the facts of the case.

The EP agent in the instant case, who audited the Plan and subsequently recommended and obtained its disqualification, did not notify Ace or the Plan trustee of the CAP Program, did not discuss the CAP Program with Ace or the Plan trustee, and did not provide either with the option to utilize the program as an alternative to the Plan's disqualification. During examination of the Plan, no significant operational defects existed that would have prohibited the use of a closing agreement under the terms of the CAP Program.

There is no dispute in the instant case that Ace failed to make amendments to the Plan in order to comply with changes in the law resulting from TEFRA, DEFRA, and REA. Thus, there is no

dispute that, at the time petitioners received their lump-sum distributions from the Plan, the Plan was not qualified under section 401(a).

Petitioners assert, however, that the distributions they received from the Plan should not be taxable because respondent failed to give notice to the Plan sponsor of the possibility of using the CAP Program in order to avoid plan disqualification. Petitioners argue that this notice is mandatory under the CAP Program, which was in place at the time Ace received its final determination letter revoking the Plan's qualified status. Petitioners' argument is without merit.

The IRS will, at the request of the taxpayer, issue an initial determination letter stating whether a plan qualifies under section 401(a). The Commissioner has broad authority, however, to revoke a determination letter retroactively. Sec. 7805(b). As stated above, a plan, in order to be qualified, must initially meet the formal requirements of section 401(a) and must be continually amended to comport with subsequent changes to the statutory requirements. Buzzetta Constr. Corp. v. Commissioner, 92 T.C. 641, 646 (1989). It is clear from the record, and there is no dispute between the parties, that Ace failed to meet these requirements, and it was for this reason that the Plan's tax-exempt status was revoked.

While it appears that respondent did not handle the instant case in accordance with the guidelines set forth under the CAP

Program, this factor does not provide relief for petitioners.
See <u>Mills, Mitchell & Turner v. Commissioner</u>, T.C. Memo. 1993-99.
The CAP Program was a completely discretionary program. It is
well settled that a court may not order an agency to perform a
discretionary act. <u>Capitol Fed. Sav. & Loan v. Commissioner</u>, 96
T.C. 204, 212 (1991); <u>Buzzetta Constr. Corp. v. Commissioner</u>,
<u>supra</u> at 648; <u>Oakton Distribs., Inc. v. Commissioner</u>, 73 T.C.
182, 188 (1979).

Moreover, this Court may not substitute its judgment for
that of the Commissioner when reviewing discretionary acts.
<u>Buzzetta Constr. Corp. v. Commissioner</u>, <u>supra</u>. The
Commissioner's exercise of discretionary power will not be
disturbed unless the Commissioner abuses such discretion by
making a determination that is unreasonable, arbitrary, or
capricious. <u>Id.</u> Whether the Commissioner has abused her
discretion is a question of fact, and the taxpayer's burden of
proving an abuse of discretion is greater than that of the usual
preponderance of the evidence. <u>Pulver Roofing Co. v.
Commissioner</u>, 70 T.C. 1001, 1011 (1978).

We find that petitioners have failed to meet their burden of
proof in the instant case. We find further that the lump-sum
distributions received by petitioners in 1988 from their profit-
sharing plan are includable in gross income for taxable year 1988
under sections 402(b)(1) and 83, and this result cannot be

avoided by any claimed relief under the CAP Program.

Accordingly, respondent's determination is sustained.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155.</u>