T.C. Memo. 2015-195

UNITED STATES TAX COURT

DNA PRO VENTURES, INC. EMPLOYEE STOCK OWNERSHIP PLAN,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21047-14R.                    Filed October 5, 2015.

Mark Eldridge (trustee), for petitioner.

Pamela J. Sewell, for respondent.

MEMORANDUM OPINION

DAWSON, Judge:  In this declaratory judgment proceeding under section

7476[1] petitioner challenges respondent's June 6, 2014, final nonqualification letter

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the period under consideration, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

[*2] determining that for its plan year ending December 31, 2008, and its subsequent plan years (2009 and 2010), the DNA Pro Ventures, Inc. Employee Stock Ownership Plan (ESOP or plan) was not qualified under section 401(a) and that the related trust was not exempt from taxation under section 501(a).

The broad question before us is whether there was an abuse of discretion in respondent's determination. To decide that question, we consider whether the ESOP: (1) exceeded the contribution limits under sections 401(a)(16) and 415(c); and (2) failed to follow the plan terms by not obtaining a proper valuation of the stock for any plan year. As explained hereinafter, we conclude that there was no abuse of discretion in respondent's determination.

## Background

The parties filed a joint motion for leave to submit this case for decision under Rule 122. We granted the motion and decide this case on the basis of the pleadings and the stipulated administrative record. See Rule 217(b)(2). We incorporate the stipulated record herein.

### Advanced Orthopaedic Associates, P.A.

Daniel J. Prohaska is a medical doctor and an orthopaedic surgeon specializing in sports medicine, arthroscopy, and knee and shoulder surgery. He worked with Advanced Orthopaedic Associates, P.A. (Advanced Orthopaedic),

[*3] between 2008 and 2010. Advanced Orthopaedic paid Dr. Prohaska compensation of $1,485,538, $1,601,100, and $1,822,000 for 2008, 2009, and 2010, respectively. During each year Dr. Prohaska deferred the maximum amount allowable to the Advanced Orthopaedic section 401(k) plan.

DNA Pro Ventures, Inc.

Dr. Prohaska was also involved with DNA Pro Ventures, Inc. (DNA), a Kansas corporation, incorporated on November 12, 2008. At the time it filed its petition, DNA had its principal mailing address in Iowa. DNA is the employer, plan sponsor, and plan administrator of the ESOP.

Dr. Prohaska and his wife, Amy, were DNA directors at the time of its incorporation. Dr. Prohaska acted as DNA's chairman and served as its president and treasurer; Mrs. Prohaska served as DNA's vice president and secretary. Dr. and Mrs. Prohaska are DNA's only employees.

The Plan

On November 12, 2008, DNA created the ESOP for the benefit of its employees. On November 28, 2008: (1) Dr. Prohaska signed the plan on behalf of DNA and Ryan Eldridge signed it as trustee and (2) the ESOP and the trust were amended in that Dr. Prohaska replaced Ryan Eldridge as trustee. The applicable provisions of the plan are as follows:

**[*4]** 1.10: "Compensation" means, with respect to any Participant and except as otherwise provided herein, such Participant's wages as defined in Code Section 3401(a) and all other payments of compensation by the Employer * * * for a Calendar Year ending with or within the Plan Year (the "determination period") for which the Employer is required to furnish the Participant a written statement under Code Sections 6041(d), 6051(a)(3) and 6052 (Form W-2 wages). * * *

    \*      \*      \*      \*      \*      \*      \*

1.15: "Eligible Employee" means any Employee, except as provided below. The following Employees shall not be eligible to participate in this Plan:

(a) Employees of Affiliated Employers, unless such Affiliated Employers have specifically adopted this Plan in writing.

(b) Individuals who are not reported on the payroll records of the Employer as common law employees. * * *

(c) Employees who are Leased Employees within the meaning of Code Sections 414(n)(2) and 414(o)(2).

(d) Employees whose employment is governed by the terms of a collective bargaining agreement between Employee representatives * * * and the Employer * * *.

    \*      \*      \*      \*      \*      \*      \*

1.21: "Fiscal Year" means the Employer's accounting year of 12 months commencing on January 1st of each year and ending the following December 31st, except for the first Fiscal Year which commenced November 12th.

    \*      \*      \*      \*      \*      \*      \*

**[*5]** 1.46: "Plan Year" means the Plan's accounting year of twelve (12) months commencing on January 1st of each year and ending the following December 31st, except for the first Plan Year which commenced November 12th.

\* \* \* \* \* \* \*

1.61: "Year of Service" means the computation period of twelve (12) consecutive months, herein set forth, during which an Employee has at least 1000 Hours of Service. \* \* \* in determining whether an Employee has completed a "Year of Service" for benefit accrual purposes in the short Plan Year, the number of the Hours of Service required shall be proportionately reduced based on the number of full months in the short Plan Year.

\* \* \* \* \* \* \*

3.1: CONDITIONS OF ELIGIBILITY. Any Eligible Employee who was employed on the last day of the first Plan Year shall be eligible to participate and shall enter the Plan as of the first day of such Plan Year. Any other Eligible Employee who has completed one (1) Year of Service and has attained age 21 shall be eligible to participate hereunder as of the date such Employee has satisfied such requirements.

3.2: EFFECTIVE DATE OF PARTICIPATION. An Eligible Employee shall become a Participant effective as of the earlier of the first day of the Plan Year or the first day of the seventh month of such Plan Year coinciding with or next following the date such Employee met the eligibility requirements of Section 3.1 \* \* \*.

\* \* \* \* \* \* \*

4.3(c): ALLOCATION OF CONTRIBUTION, FORFEITURES AND EARNINGS. The Company Stock Account of each Participant shall be credited as of each Anniversary Date with Forfeitures of Company Stock and the Participant's allocable share of Company

**[*6]** Stock (including fractional shares) purchased and paid for by the Plan or contributed in kind by the Employer. * * *

  *   *   *   *   *   *   *

6.1: VALUATION OF THE TRUST FUND. The Administrator shall direct the Trustee, as of each Valuation Date, to determine the net worth of the assets comprising the Trust Fund as it exists on the Valuation Date. * * *

6.2: METHOD OF VALUATION. Valuations must be made in good faith and based on all relevant factors for determining the fair market value of securities. * * * Company stock not readily tradeable on an established securities market shall be valued by an independent appraiser meeting requirements similar to the requirements of the Regulations prescribed under Code Section 170(a)(1).

## DNA Actions

On November 12, 2008, DNA issued: (1) 50 shares of class A common stock to Dr. Prohaska in exchange for a $500 cash contribution and (2) 50 shares of class A common stock to Mrs. Prohaska in exchange for a $500 cash contribution. As of the date of issuance, the par value of the class A common stock was $10 per share.

On December 31, 2008, DNA issued 1,150 shares of class B common stock to the trust with a par value of $10 per share. The trust then allocated the 1,150 shares of DNA stock to Dr. Prohaska's ESOP account in 2008.

**[*7]** During 2008 DNA did not pay any salaries, wages, or other officer's compensation. For 2009 DNA issued separate Forms W-2, Wage and Tax Statement, to Dr. and Mrs. Prohaska reporting the respective amounts of $4,500 (during its fourth quarter beginning October 1). DNA issued Forms W-2 for 2010 to Dr. and Mrs. Prohaska reporting the respective amounts of $3,000.

DNA deducted a $1,350 retirement plan contribution on its Form 1120, U.S. Corporation Income Tax Return, for 2009.

Although DNA was the sponsor of the ESOP, it did not file any Forms 5500, Annual Return/Report of Employee Benefit Plan, for plan years 2008, 2009, and 2010.

On August 10, 2012, the plan was amended to name Mark Eldridge trustee, replacing Dr. Prohaska, and DNA then elected Mark Eldridge as an additional DNA vice president.

Internal Revenue Service Examination of Plan and Determination

In 2011 the Internal Revenue Service (IRS) began its examination of the plan.[2] On December 31, 2012, Revenue Agent Michael E. Talley sent Dr.

---

[2]Several times, beginning September 13, 2011, the IRS requested (pursuant to Form 4564, Information Document Request) DNA to provide numerous documents relating to the examination of the plan (for the period November 12, 2008, through December 31, 2010): (1) participant allocation schedules,

(continued...)

**[*8]** Prohaska Form 886-A, Explanations of Items, determining that the ESOP was not qualified under section 401(a) for the plan years ending December 31, 2008, 2009, and 2010. Any related trust was also determined not to be exempt from taxation under section 501(a) for the same trust years.

On June 6, 2014, respondent issued a final nonqualification letter, Letter 1757-A, to DNA explaining that the ESOP had failed to follow the terms set forth in the plan documents and therefore was not qualified under section 401(a) and the ESOP trust was not exempt from tax under section 501(a). The nonqualification letter states in part as follows:

> In this case, the ESOP had two separate failures to follow its plan document during 2008. First, the ESOP sponsored by DNA Pro Ventures allowed Dr. Daniel J. Prohaska and Amy Prohaska to participate in the ESOP as of the plan year ending December 31, 2008, in violation of the terms of the ESOP plan document regarding eligibility and participation. Second, the ESOP plan document required the ESOP to use appraisal rules substantially similar to those issued under I.R.C. sec. 170(a)(1) when it obtained annual appraisals for the same plan year. The ESOP, however, failed to obtain any appraisal for the 2008 plan year or for any plan year.

> \* \* \* \* \* \* \*

---

[2](...continued)
(2) employee census reports, (3) participant account statements, (4) trustee or administrator reports, ledgers, journals, or other financial reports, (5) copies of the ESOP bank statements, and (6) copies of the independent appraisal reports. However, DNA did not provide any of these requested documents.

**[*9]**      During 2008, DNA Pro Ventures, Inc. transferred stock into the ESOP without consideration, and the stock accrued to the benefit of Dr. Prohaska (50%) and Mrs. Prohaska (50%).  The value of the stock accruing to each participant, as reported by the ESOP, substantially exceeded 100% of each Dr. Prohaska's and Mrs. Prohaska's compensation from DNA Pro Ventures, Inc. for the year 2008.  Thus, the ESOP failed to comply with I.R.C. secs. 401(a)(16) and 415 for the Plan Year ending December 31, 2008, and is not a qualified plan within the meaning of I.R.C. sec. 401(a) for the plan year ending December 31, 2008 and all subsequent plan years.

      *      *      *      *      *      *      *

      For the reason stated above, it is determined that the ESOP is not qualified under I.R.C. sec. 401(a) for the plan years ending December 31, 2008 and all subsequent plan years.  As a result, the Plan is not exempt from taxation under I.R.C. sec. 501(a) for trust years ending December 31, 2008 and all subsequent plan years.

## Discussion

Section 7476(a) authorizes this Court to render the requested declaratory judgment, subject to the limitations of subsection (b).  Neither party disputes that those limitations have been met in this case, and we are satisfied that we have jurisdiction over the petition.  See, e.g., Efco Tool Co. v. Commissioner, 81 T.C. 976 (1983).

In this declaratory judgment proceeding we review respondent's determination that the plan was not qualified.  The standard for our review was

**[*10]** enunciated in <u>Buzzetta Constr. Corp. v. Commissioner</u>, 92 T.C. 641, 648 (1989), as follows:

> When reviewing discretionary administrative acts, however, this Court may not substitute its judgment for that of the Commissioner. The exercise of discretionary power will not be disturbed unless the Commissioner has abused his discretion, i.e., his determination is unreasonable, arbitrary, or capricious. Whether the Commissioner has abused his discretion is a question of fact, and petitioner's burden of proof of abuse of discretion is greater than that of the usual preponderance of the evidence. <u>Estate of Gardner v. Commissioner</u>, 82 T.C. 989, 1000 (1984); <u>Oakton Distributors, Inc. v. Commissioner</u>, 73 T.C. 182, 188 (1979).

Further, "[i]n order for a plan to be qualified, both its terms and its operations must meet the statutory requirements." <u>Id.</u> at 646.

Respondent's determination is presumed to be correct, and the burden of proof is on petitioner. <u>See</u> Rule 142(a). To prevail, petitioner must prove that respondent abused his discretion. <u>See</u> <u>Buzzetta Constr. Corp. v. Commissioner</u>, 92 T.C. at 648. Petitioner has failed to do so.

Section 401(a) enumerates requirements which must be met in order for a trust to be considered a qualified trust entitled to preferential tax treatment under section 501(a). <u>See</u> <u>Michael C. Hollen, D.D.S., P.C. v. Commissioner</u>, T.C. Memo. 2011-2, <u>aff'd per curiam</u>, 437 F. App'x 525 (8th Cir. 2011); <u>Ronald R. Pawlak P.C. v. Commissioner</u>, T.C. Memo. 1995-7. Its terms and its operations

[*11] must meet the statutory requirements. Buzzetta Constr. Corp. v.

Commissioner, 92 T.C. at 646. If a qualified plan meets all of the section 401(a)

requirements, then the plan is exempt from taxation under section 501(a). See

Michael C. Hollen, D.D.S., P.C. v. Commissioner, T.C. Memo. 2011-2. We need

not discuss specifically the qualification of the related trust under section 501(a)

because the exemption of the trust under section 501(a) follows from the

qualification of the plan under section 401(a). See id.

A qualified plan must meet the section 401(a) requirements in both form

and operation. Ludden v. Commissioner, 620 F.2d 700, 702 (9th Cir. 1980), aff'g

68 T.C. 826 (1977); sec. 1.401-1(b)(3), Income Tax Regs. A form failure occurs

when a plan document does not contain required language or terms. See Michael

C. Hollen, D.D.S., P.C. v. Commissioner, T.C. Memo. 2011-2. An operational

failure occurs when: (1) a plan, in operation, does not meet the section 401(a)

requirements, see Martin Fireproofing Profit-Sharing Plan & Tr. v. Commissioner,

92 T.C. 1173 (1989), and (2) a plan fails to follow the terms of the plan document,

see Michael C. Hollen, D.D.S., P.C. v. Commissioner, T.C. Memo. 2011-2.

In general, a qualification failure pursuant to section 401(a) is a continuing

failure because allowing a plan to requalify in subsequent years would be to allow

a plan "to rise phoenix-like from the ashes of such disqualification and become

**[*12]** qualified for that year." Pulver Roofing Co. v. Commissioner, 70 T.C. 1001, 1015 (1978); see also Martin Fireproofing Profit-Sharing Plan & Tr. v. Commissioner, 92 T.C. at 1184-1189.

As explained below, the ESOP failed to satisfy the section 401(a) requirements in two separate ways, either of which is sufficient for the plan to not be qualified. See secs. 401(a), 4975(e)(7). Clearly, respondent has not abused his discretion.

Contribution Limits

Section 401(a)(16) provides that a trust is not qualified if the plan "provides for benefits or contributions which exceed the limitations of section 415." For the 2008 plan year, a participant's annual additions were limited to the lesser of $40,000 or 100% of the participant's compensation. See sec. 415(c)(1). Annual additions are the sum of employer contributions, employee contributions, and forfeitures. Sec. 415(c)(2). An allocation of stock to a participant's account is an employer contribution. Sec. 1.415(c)-1(b)(5), Income Tax Regs. "Participant's compensation" is "the compensation of the participant from the employer for the year." Sec. 415(c)(3)(A). A plan that allows contributions that exceed the contribution limits of section 415 is not a qualified plan under section 401(a). See, e.g., Van Roekel Farms, Inc. v. Commissioner, T.C. Memo. 2000-171, aff'd, 12

[*13] F. App'x 439 (8th Cir. 2001). In addition, a section 415 failure is a continuing failure that disqualifies the plan for a future year even when there is not a separate, independent section 415 failure in the future year. Martin Fireproofing Profit-Sharing Plan & Tr. v. Commissioner, 92 T.C. at 1184-1185.

Neither Dr. Prohaska nor Mrs. Prohaska received any compensation for his or her services as a DNA officer or employee during 2008. Accordingly, their contribution limits were zero. Because DNA improperly transferred to Dr. Prohaska's ESOP account 1,150 shares of DNA's class B common stock in 2008 (with a $10 par value per share), the annual addition to his account was $11,500 more than his contribution limit under section 415(c). Accordingly, because Dr. Prohaska's ESOP account received an annual addition in excess of the section 415(c) limitation, the ESOP failed the requirements of section 401(a)(16) and was not a qualified plan for 2008. Moreover, because the section 415 failure is a continuing failure, the ESOP failed section 401(a)(16) for 2008 and was not a section 401(a) qualified plan for all subsequent plan years.

Failure To Obtain Appraisals

Section 401(a)(28)(C) provides that in the case of an ESOP an "independent appraiser" must perform all valuations of securities that are not readily tradable on

**[*14]** an established securities market and that the standards for appraisers are similar to those set forth in the regulations promulgated under section 170(a)(1).

As set forth above, section 6.2 of the plan document requires a good-faith valuation to determine the fair market value of the securities. Similarly, section 6.1 of the plan document requires that valuation of the trust fund be made on each valuation date. Despite these requirements, the ESOP did not obtain any annual appraisals in 2008, 2009, and 2010, resulting in an operational failure rendering the ESOP not a section 401(a) qualified plan because the ESOP was not a "definite written program". See sec. 1.401-1(a)(2), Income Tax Regs. Moreover, because the failure to follow the plan is a continuing failure, the ESOP was also not qualified for the plan years ending December 31, 2009 and 2010.

In sum, because the ESOP was not a qualified trust, it was not exempt from tax pursuant to section 501(a) for any year.

Conclusion

We conclude that there was no abuse of discretion in respondent's determination that the plan was not qualified under section 401(a) for its 2008 year and subsequent plan years and that the trust was not exempt under section 501(a). We so hold.

Any contentions we have not addressed are irrelevant, moot, or meritless.

**[\*15]**  To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.