T.C. Memo. 2018-92

UNITED STATES TAX COURT

VAL LANES RECREATION CENTER CORPORATION, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24887-10R.                    Filed June 26, 2018.

James R. Monroe and Michael A. Gilmer, for petitioner.

Nicholas D. Doukas and David Conrad, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  In this declaratory judgment proceeding under section

7476,[1] petitioner challenges respondent's September 29, 2010, final revocation

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court's Rules of Practice and Procedure.

**[*2]** letter (FRL) retroactively revoking respondent's prior favorable determination letter (FDL) finding that petitioner's employee stock ownership plan (ESOP) was qualified under section 401(a) and that the ESOP's related trust (ESOT) was exempt from taxation under section 501(a) for the ESOT's plan year ending March 31, 2001, and all subsequent plan years.  The Court concludes that respondent abused his discretion in revoking the FDL.[2]

## FINDINGS OF FACT

The parties were unable to agree as to the completeness and accuracy of the purported administrative record, and the Court held a hearing in this matter to determine the contents of the administrative record.  At the hearing the parties submitted additional documents that they agreed were part of the administrative record.  After the hearing the parties submitted this case pursuant to Rule 122, agreeing that the record also included witness testimony and additional exhibits presented at the hearing.  In an action for declaratory judgment involving the revocation of a retirement plan determination, the Court is not limited to the administrative record in making its decision.  Rule 217(a); RSW Enters., Inc. v. Commissioner, 143 T.C. 401, 407 (2014).  Therefore, the Court incorporates the

---

[2]This opinion is limited to the ESOP's qualification.  Respondent has raised several income tax issues, but the Court does not address matters here that are more appropriately addressed in a deficiency proceeding.

[*3] stipulated record herein by this reference and makes additional findings on the basis of the information presented during the hearing.[3]

Petitioner was incorporated in Iowa on August 21, 1990, for purposes of operating a bowling alley in West Des Moines, Iowa. Petitioner was an S corporation for Federal tax purposes from incorporation in 1990 to at least 2005. Patrick Essy served as petitioner's president, treasurer, and sole director. Rosalie Essy, Mr. Essy's wife, served as petitioner's vice president and secretary. Petitioner had no other officers. Before October 2000 Mr. Essy owned all 5,000 shares of petitioner.

Beginning in or around 2000 petitioner retained Stephen Thielking and the accounting firm Oden and Thielking, C.P.A.s, P.C., to provide accounting services. Mr. Thielking had been a licensed certified public accountant (CPA) in

---

[3]On brief respondent incorrectly asserts that petitioner withdrew Exhibits 110-P through 120-P and 123-P through 127-P introduced during the hearing. Only Exhibits 110-P through 114-P were withdrawn. Respondent used the remaining exhibits during the hearing despite objecting to their admissibility. The Court reserved ruling on Exhibits 115-P through 120-P and 123-P through 127-P to allow the parties to brief their respective arguments to respondent's objections to the admissibility of those exhibits. The Court now overrules respondent's objections and rules that the exhibits are admitted as supplements to the administrative record. The Court reiterates that it may look beyond the administrative record in making its decision and may consider witness testimony made in reliance on the exhibits. See supra p. 2.

[*4] Iowa since 1978 and had known Mr. and Mrs. Essy since the mid to late 1990s.[4] Mr. Thielking's firm prepared petitioner's Form 1120S, U.S. Income Tax Return for an S Corporation, each year beginning in or around 2000 through at least 2005.

In addition to providing services to petitioner, Mr. Thielking also prepared and filed the incorporation documents for Essy Management Corp. (Essy Management). Essy Management was incorporated in Iowa on September 12, 2000, and was an S corporation for Federal tax purposes from 2000 to at least March 2005. It was created to hold real estate and investments as well as to provide management services. Mr. Essy was the president of Essy Management. Mr. Thielking's firm prepared the corporate tax returns and corporate minutes for Essy Management between 2000 and 2006.[5]

On September 12, 2000, upon Mr. Thielking's recommendation, petitioner's board of directors adopted the ESOP and the ESOT with a plan year ending March 31. Mr. Thielking prepared the plan and trust documents with the board's

---

[4]Mr. Thielking passed away in December 2016, after the hearing in this matter but before this opinion was filed.

[5]Beginning some time after 2005 Mr. Thielking's firm served as the registered agent for both petitioner and Essy Management because Mr. and Mrs. Essy moved out of Iowa.

[*5] expectation of submitting the documents to the Internal Revenue Service (IRS) for a favorable determination regarding the ESOP's qualified status. Mr. Essy was the ESOP's administrator; Mrs. Essy was the ESOT's trustee. Additionally, the board of directors adopted a resolution reserving the right to amend the ESOP retroactively to its effective date (September 12, 2000) if necessary to receive a favorable determination from the IRS.

After forming the ESOP and the ESOT, Mr. Essy transferred all 5,000 outstanding shares of petitioner's stock to the ESOT in exchange for the ESOT's assumption of a non-interest-bearing account payable of $5,000 to Mr. Essy ($1/share). The ESOT also received 10 shares of Essy Management's stock in exchange for the ESOT's assumption of a non-interest-bearing account payable of $10 to Essy Management ($1/share).[6]

Petitioner retained Mr. Thielking to prepare and submit a Form 5300, Application for Determination for Employee Benefit Plan, for a favorable determination from respondent regarding the ESOP's qualification under section 401(a). Mr. Essy signed Form 5300 and dated it September 12, 2000. On May 5,

---

[6]The payables were recorded on the ESOT's books but remained unpaid. The ESOT's Schedule I, Financial Information -- Small Plan, attached to its Form 5500, Annual Return/Report of Employee Benefit Plan, listed "$5,010" in liabilities each year.

**[\*6]** 2001, apparently in response to respondent's review of petitioner's application, petitioner submitted an amended and restated ESOP plan document reflecting the intent to have the document executed upon receipt of the FDL. The amended plan document included language to comply with section 414(u) requiring qualified plans to contain certain language with respect to participants with qualified military service.

On June 11, 2001, petitioner submitted several additional amendments reflecting the intent to have them executed upon receipt of the FDL. On June 21, 2001, respondent issued the FDL to petitioner with respect to the ESOP, conditioned upon petitioner's timely adoption of the amendments attached to the May 5 and June 11, 2001, letters.[7] Petitioner adopted the amendments and restated plan document shortly after receiving the FDL.[8]

For each plan year, petitioner retained Mr. Thielking to prepare and file Form 5500 detailing the ESOT's assets as well as petitioner's contributions to the ESOT. Because the ESOT was the sole shareholder of both petitioner and Essy Management, all net income from both S corporations flowed through to the

---

[7]Rev. Proc. 2001-55, 2001-2 C.B. 552, generally extended the deadline for amending plans pursuant to the sec. 414(u) amendments until February 28, 2002.

[8]See infra pp. 24-25 for further explanation regarding this finding.

[*7] ESOT in accordance with the S corporation regime in effect at the time. The ESOT's net assets as of the end of the initial plan year ending March 31, 2001, consisted of petitioner's stock, Essy Management's stock, income from petitioner and Essy Management, and employer contributions.[9]

A portion of the 5,000 shares of petitioner's stock and all 10 shares of Essy Management's stock were allocated to Mr. Essy's account some time during the initial plan year.[10] The remaining shares of petitioner's stock were allocated to the three other employees deemed to be eligible plan participants during the initial

_____

[9]The Court bases its finding on the ESOT's Form 5500 for the plan year ending March 31, 2001; the ESOT's Schedule K-1, Shareholder's Share of Income, Credits, Deductions, etc., for petitioner for the period from October 1, 2000, to March 31, 2001; the ESOT's Schedule K-1 for Essy Management; petitioner's Form 1120S for the short period from October 1, 2000, to March 31, 2001; and Essy Management's Form 1120S for the period from September 12, 2000, to March 31, 2001. The record does not contain stock appraisals for the initial plan year ending March 31, 2001. The stock valuation as of that date is based on the participant account balances for the plan year ending March 31, 2002, which list both the "Current" and "Accumulative" amounts for the "Change in Value of Trust Assets" allocated to each participant's account. The Court calculated the total value of petitioner's stock and the total value of Essy Management's stock as of March 31, 2001, by subtracting the current amount from the accumulative amount for each plan participant.

[10]Respondent determined in his April 17, 2008, Form 886-A, Explanation of Items, that on the basis of the participant account statements for the plan year ending March 31, 2002, all 10 shares of Essy Management's stock and between 75% and 80% of the shares of petitioner's stock were allocated to Mr. Essy's account some time during the initial plan year ending March 31, 2001. Upon review of the record the Court agrees.

[*8] plan year.[11]  Mr. Essy's wages were $41,557 and $40,000 in 2000 and 2001, respectively.  Petitioner contributed $1,626.92 to Mr. Essy's account for the plan year ending March 31, 2001, and $500 for the plan year ending March 31, 2004.  Petitioner made no contributions during the plan years ending March 31, 2002 and 2003.  Mr. Essy's account balance as of the end of each year included his share of the ESOT's income/loss, his share of the change in value of the ESOT's assets, employer contributions (if any), and his share of expenses (if any).  Allocations to Mr. Essy's account were $138,523.94, $255,939.14, and $167,060.85 in the plan years ending in 2001, 2002, and 2004, respectively, and a loss of $155,268.58 in the plan year ending in 2003.

In addition to preparing Form 5500, Mr. Thielking performed and submitted appraisals valuing petitioner's stock and Essy Management's stock as of the end of the plan year.  Each appraisal included the following declaration:[12]

The undersigned holds himself out to be an appraiser.

[11]The FRL did not challenge the allocations of income to the other plan participants' accounts.

[12]Although the record does not contain signed copies of the appraisals, Mr. Thielking credibly testified that it was his practice to submit Form 5500 and the original, signed appraisal to the Department of Labor in accordance with yearly reporting requirements, see Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, sec. 104, 88 Stat. at 847, information that was conveyed to the IRS examiner.

[*9]  The undersigned is a certified public accountant who is familiar with the assets being appraised.

The undersigned is not a party to any transaction related to this appraisal.

The undersigned understands that a false or fraudulent overstatement of the value of the property being appraised may subject the appraiser to a civil penalty under Internal Revenue Code section 6701 for aiding and abetting an understatement of tax liability, and consequently, the appraiser may have appraisals disregarded pursuant to 31 U.S.C. 330(c).

The fee charged for this appraisal is not based upon a percentage of the appraisal value of the property.

Appraisals prepared by the appraiser are not being disregarded pursuant to 31 U.S.C. 330(c) on the date the appraisal summary is signed.

On May 12, 2005, respondent notified petitioner that the ESOP was selected for examination for the plan year ending March 31, 2003.  Petitioner retained Mr. Thielking to represent it throughout the examination.  On February 8, 2007, during examination of the ESOP, respondent requested executed copies of the plan amendments attached to the May 5 and June 11, 2001, letters.  On March 7 and again on April 17, 2007, respondent sent petitioner a Form 886-A identifying five issues constituting possible grounds for revocation of the ESOP's qualified status, including that petitioner made excess contributions to the ESOT, failed to use an independent appraiser, and failed to timely amend the ESOP for required

[*10] language.  On April 17, 2008, respondent sent petitioner another Form 886-A proposing to disqualify the ESOP because of excess contributions and/or failure to use an independent appraiser but not failure to timely amend the ESOP for required language.

On May 28, 2008, on petitioner's behalf Mr. Thielking submitted a protest to the proposed disqualification.  The protest listed Mr. Thielking's qualifications including his educational background in accounting, his CPA licensure, his membership in professional organizations, his experience teaching courses on ESOPs and appraisals of closely held corporations, his experience performing appraisals, and his firm's advertisement to the public as an appraiser of businesses and estates.  The protest also included a copy of a Des Moines Yellow Pages listing in which Mr. Thielking's firm identified "Business & Estate Appraisals" among its available services.

On September 29, 2010, following the examination, respondent issued the FRL to petitioner retroactively revoking the FDL and determining that the ESOP did not meet the requirements of section 401(a) for the plan year ending March 31, 2001, and all subsequent plan years and that the ESOT was therefore not exempt

[*11] under section 501(a).[13]  Respondent identified the following three grounds

as bases for the FRL:  (1) annual additions in excess of the dollar limit in section

415(c)(1)(A) were allocated to Mr. Essy's account during the plan years ending in

2001, 2002, and 2004; (2) the ESOP failed to use an independent appraiser as

required by section 401(a)(28)(C) to perform annual valuations of the employer

securities the ESOT held; and/or (3) petitioner failed to timely amend the ESOP to

include mandatory provisions set forth in section 414(u) as required by section

401(a).[14]  Petitioner timely filed a petition for declaratory judgment.

## OPINION

Section 7476(a) authorizes this Court to render a declaratory judgment,

subject to the limitations listed in section 7476(b).  Neither party disputes that

---

[13]The FRL incorrectly stated the ESOP did not meet the requirements of sec. 401(a) "for plan years ending September 12, 2000".  However, the determination regarding the ESOP's qualification was for the plan year ending March 31, 2001, and all subsequent plan years.

[14]Forms 886-A sent to petitioner on March 7 and April 17, 2007, did not contain any facts, law, or analysis with respect to petitioner's alleged failure to timely amend the ESOP with the required sec. 414(u) language, instead listing broadly as an issue "Should the plan be disqualified for failure to timely amend for required plan language?".  Form 886-A sent to petitioner on April 17, 2008, did not list failure to timely amend as an issue.  It was not until the FRL that respondent listed failure to timely amend the plan and specified the absence of the sec. 414(u) language as a ground for revocation.

[*12] those limitations have been met, and the Court is satisfied it has jurisdiction over the petition. See Efco Tool Co. v. Commissioner, 81 T.C. 976 (1983).

Petitioner bears the burden of proving that respondent abused his discretion in determining that the ESOP was not qualified under section 401(a). To do so, petitioner must persuade the Court that respondent's determination was unreasonable, arbitrary, or capricious. See Buzzetta Constr. Corp. v. Commissioner, 92 T.C. 641, 648 (1989). Petitioner has met its burden.

An ESOP is a retirement plan designed to invest primarily in qualified employer securities placed in a related trust. For the trust to receive favorable tax treatment under section 501(a), the ESOP must be considered a "qualified plan" by meeting the requirements set forth in section 401(a). For a plan to be qualified "both its terms and its operations must meet the statutory requirements." Buzzetta Constr. Corp. v. Commissioner, 92 T.C. at 646. Before 1998 ESOPs were not eligible S corporation shareholders.

Effective January 1, 1998, Congress amended section 1361(c) to allow ESOPs and other tax-exempt organizations to be eligible S corporation shareholders. Small Business Job Protection Act of 1996 (SBJPA), Pub. L. No. 104-188, sec. 1316(a), 110 Stat. at 1785-1786. Also effective January 1, 1998, Congress amended section 512 so that an ESOP's pro rata share of S corporation

[*13] earnings did not constitute "unrelated business taxable income". See Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 1523, 111 Stat. at 1070-1071. These provisions created a framework under which an ESOP could own all outstanding shares of an S corporation, deferring tax on the S corporation's income at both the entity level and the shareholder level. That structure remained unchanged for the next three years.

In 2001 Congress amended section 409(p) to prohibit allocations of S corporation stock held by an ESOT to certain persons deemed to own at least 50% of the number of shares of stock in the S corporation. See Economic Growth and Tax Relief Reconciliation Act of 2001 (EGTRRA), Pub. L. No. 107-16, sec. 656, 115 Stat. at 131-135. Any such prohibited allocation would result in an excise tax to the ESOP and income recognition to the persons deemed to own at least 50% of the shares of stock in the S corporation. In amending section 409(p), Congress recognized that "the income of an S corporation allocable to an ESOP * * * [was] not subject to current taxation." H.R. Conf. Rept. No. 107-84, at 274 (2001), 2001-3 C.B. 123, 397. The change generally applied to plan years beginning after 2004 for an ESOP that existed before March 14, 2001. EGTRRA sec. 656(d); see also Austin v. Commissioner, T.C. Memo. 2017-69, at *32-*33 (addressing the framework for certain ESOT-owned S corporations that existed between 1998 and

[*14] 2005).  Petitioner and Essy Management were S corporations, and their ESOP and ESOT existed before March 14, 2001.

Plan Contributions

Section 415(c)(1) limits the annual addition to a participant's account to the lesser of (1) $30,000 (adjusted annually for inflation) or (2) 25% of the participant's compensation.[15]  "Annual addition" includes employer contributions, employee contributions, and forfeitures.  Sec. 415(c)(2).  Section 401(a)(16) provides that a "trust shall not constitute a qualified trust under this section if the plan of which such trust is a part provides for benefits or contributions which exceed the limitations of section 415."

In the FRL respondent determined that the ESOP failed to meet the requirements of section 401(a)(16) for the plan years ending in 2001, 2002, and 2004.  Respondent determined that the amounts allocated to Mr. Essy's account during those plan years should be recharacterized as annual additions under section 1.415-6(b)(2), Income Tax Regs.  Section 1.415-6(b)(2), Income Tax Regs., provides:

---

[15]This was the limit during the ESOP's first two plan years.  For plan years beginning after December 31, 2001, the limit was the lesser of (1) $40,000 or (2) 100% of the participant's compensation.

**[*15]** [T]he term "annual additions" includes employer contributions which are made under the plan. Furthermore, the Commissioner may in an appropriate case, considering all of the facts and circumstances treat transactions between the plan and the employer or certain allocations to participants' accounts as giving rise to annual additions.

In the FRL respondent stated that the allocations should be recharacterized because the "dividend amounts paid on employer stock held by the trust" were treated as income instead of being treated as contributions, and "the effect of this financing was to transfer" petitioner's earnings and Essy Management's earnings to the ESOT primarily for Mr. Essy's benefit.

Petitioner has established that both it and Essy Management were S corporations (and had been since incorporation). Petitioner has shown that there were no distributions from it or Essy Management to the ESOT. The Court finds that contrary to respondent's position in the FRL, neither petitioner nor Essy Management paid "dividends" on its stock because both were S corporations from incorporation through at least 2005. Additionally, the Court finds that the ESOT's earnings were not the result of a financing arrangement and did not constitute a transfer of funds. Rather, income and losses properly flowed through from petitioner and Essy Management to the ESOT, the sole shareholder of both

[*16] corporations.[16]  Without any facts or circumstances to justify the application of section 1.415-6(b)(2), Income Tax Regs., the Court concludes that respondent acted arbitrarily by recharacterizing allocations to Mr. Essy's account as plan contributions in the plan years ending in 2001, 2002, and 2004.

In the FRL respondent also addressed the initial allocation of Essy Management stock to Mr. Essy but did not make clear the relationship between the initial stock allocation and respondent's determination of excess contributions.  In his answering brief respondent clarifies that the initial transfer of stock to the ESOT without consideration constituted a plan contribution equal to the value of the stock under section 1.415-6(b)(4), Income Tax Regs.[17]  Respondent argues that the large increase in Mr. Essy's account balance during the initial short plan year from September 12, 2000, to March 31, 2001, demonstrates that the stock must have been worth more than the purported value of $5,010 at the time of its

---

[16]The Court reiterates that a unique framework existed for a short period during which an ESOT-owned S corporation could defer income tax at both the entity and shareholder levels without triggering additional tax consequences to persons in a position similar to Mr. Essy's.  See supra pp. 12-14.  The ESOP's plan years ending in 2001, 2002, and 2004 fell within that period.

[17]On brief respondent mentions that the initial transfer of stock was also a prohibited transaction.  The Court does not address any income tax or excise tax consequences for purposes of this declaratory judgment proceeding.

**[\*17]** contribution to the ESOT; therefore, respondent argues, the initial contribution of stock exceeded the contribution limit during the initial short plan year.

Petitioner contends that the ESOT purchased the stock through an account payable from the ESOT to Mr. Essy. Petitioner further argues that even if the stock transfer was without consideration, the total stock was valued at $5,010 ($1/share) at the time of its contribution to the ESOT. Because the 10 shares of Essy Management stock and a portion of petitioner's stock were allocated to Mr. Essy's account, his total stock allocation was worth no more than $5,010. Even when combined with the $1,626.92 plan contribution made to Mr. Essy's account, the total did not exceed the plan limitation for 2001.

Petitioner has demonstrated that Mr. Essy's account balance increased from September 12, 2000, to March 31, 2001, because of petitioner's income earned during the initial plan year, Essy Management's income earned during the initial plan year, and an increase in the value of petitioner's stock allocated to Mr. Essy's account.[18] Therefore, the increase in Mr. Essy's account balance does not show

---

[18]The Court reviewed the ESOT's Form 5500 for the initial plan year; participant account balances for the plan year ending March 31, 2002; petitioner's Form 1120S for the short period from October 1, 2000, to March 31, 2001; and Essy Management's Form 1120S for the period from September 12, 2000, to

(continued...)

**[*18]** that there was a misvaluation of stock at the time of its contribution to the ESOT or at the time of its allocation during the initial plan year. The Court does not decide for purposes of this proceeding whether the initial stock transfer was without consideration and thus constituted a plan contribution under section 1.415-6(b)(4), Income Tax Regs. Even if the transfer did constitute a contribution, the total contribution did not exceed the contribution limit for the initial plan year.[19]

_____

[18](...continued)
March 31, 2001. On the basis of those documents, the Court finds that Mr. Essy's account balance as of March 31, 2001, consisted of an employer contribution to his account, Essy Management's income, a portion of petitioner's income, and a portion of the increase in the value of petitioner's stock. The remainder of the increase in petitioner's stock value and petitioner's income was allocated to the other plan participants. The total of the participant account balances as of the end of the initial plan year matches the ESOT's net assets as reported on its Form 5500 for the initial plan year.

[19]Under sec. 415(c), the contribution limit for the initial plan year was the lesser of $30,000 or 25% of the participant's compensation. For purposes of computing the sec. 415 limitation, "compensation" includes Mr. Essy's wages between April 1, 2000, and March 31, 2001 (defined as the plan year and limitation year in the ESOP's plan document). Mr. Essy received $41,557 and $40,000 in wages in the 2000 and 2001 calendar years, respectively. There is no information regarding the amount Mr. Essy specifically earned during the 12-month limitation year from April 1, 2000, to March 31, 2001, but it is reasonable to assume that it was somewhere between $40,000 and $41,557. Additionally, neither party argues that Mr. Essy's compensation for purposes of computing the sec. 415(c) limitation was less than $40,000 during the initial plan year. Using $40,000 as Mr. Essy's compensation, the sec. 415(c) limitation was $10,000.

[*19] Respondent's position is that the excess contribution in the initial plan year is a continuing failure in future years. See Martin Fireproofing Profit-Sharing Plan & Tr. v. Commissioner, 92 T.C. 1173, 1184-1189 (1989). Because the Court does not find that the stock value exceeded the contribution limit, the Court finds respondent's argument regarding the effect on subsequent plan years to fail in this case. The Court finds that respondent abused his discretion by retroactively revoking the FDL on the basis of excess contributions to the ESOT.

Independent Appraiser

For an ESOP to be considered a qualified plan, section 401(a)(28)(C) requires that an independent appraiser perform all valuations of employer securities that are not readily tradable on an established securities market. Section 401(a)(28)(C) defines "independent appraiser" as any appraiser meeting requirements similar to the requirements of the regulations prescribed under section 170(a)(1) regarding "qualified appraisers". Those regulations specify several requirements for a "qualified appraiser" including that the individual provide a declaration on the appraisal summary that the individual holds himself or herself out to the public as an appraiser or performs appraisals regularly and is qualified to make appraisals of the type of property being valued based on his or

[*20] her background, experience, education, and membership, if any, in professional organizations. Sec. 1.170A-13(c)(3)(ii)(F), (c)(5), Income Tax Regs.

The regulations exclude the following persons from being "qualified appraisers" with respect to the property being appraised: (1) the donor of the property, (2) a party to the transaction in which the donor acquired the property, (3) the donee of the property, (4) any person employed by the donor or the donee, (5) any person considered a related party (within the meaning of section 267(b)) with respect to anyone described above, and (6) an appraiser regularly used by the donor, donee, or an employee of the donor or donee who does not perform a majority of his or her appraisals made during the taxable year for other persons. Sec. 1.170A-13(c)(5)(iv), Income Tax Regs.

In the FRL respondent concluded that Mr. Thielking was not an independent appraiser because he performed numerous services for the ESOP and ESOT each year, "including preparation of the Form 5500; participant account statements and other recordkeeping functions" in addition to receiving a regular income from petitioner. Respondent also noted that Mr. Thielking did not advertise his services as an appraiser of securities and did not sign the appraisals. Although the record does not contain signed copies of the appraisals, Mr. Thielking credibly testified that it was his practice to submit the original, signed

**[*21]** appraisals to the Department of Labor, information that was conveyed to the IRS examiner. The Court may look beyond the administrative record in this matter, see supra p. 2, and finds that Mr. Thielking did sign the appraisals.

In the FRL respondent challenged Mr. Thielking's qualifications because he did not hold himself out to the public as an appraiser of securities. Respondent specifically referenced his listing in the Des Moines telephone directory, which only advertised Mr. Thielking as a CPA. However, the record also contains a Des Moines Yellow Pages listing in which Mr. Thielking's firm identified "Business & Estate Appraisals" as one of its available services. Additionally, there is no requirement in the regulation for an advertisement to the public. Rather, the regulation requires that the individual hold himself out to the public as an appraiser or perform appraisals regularly. Sec. 1.170A-13(c)(5)(i)(A), Income Tax Regs. In the May 28, 2008, protest to respondent's proposed revocation of the FDL, petitioner explained Mr. Theilking's background and education. Petitioner also specified that Mr. Thielking taught courses on the appraisal of closely held corporations and performed "literally thousands of appraisals of all sorts." During the hearing petitioner introduced evidence that Mr. Thielking annually performed approximately 40 appraisals of ESOT-owned closely held business stock. The

[*22] Court finds that Mr. Thielking did have the appropriate background, education, and experience to value petitioner's stock and Essy Management's stock.

Respondent determined in the FRL that Mr. Thielking could not be considered "independent of either the ESOP sponsor or the administration of the ESOP" because he performed various services for the ESOP throughout the year. The regulations regarding "qualified appraisers" specifically exclude those who were donors or donees of the property (or their employees), parties to the transaction in which the donor acquired the property, related parties within the meaning of section 267(b), or an appraiser who is regularly used by any person listed above who does not perform a majority of his or her appraisals made during his or her taxable year for other persons. Sec. 1.170A-13(c)(5)(iv), Income Tax Regs. Respondent appears to argue in favor of a broader reading of the regulations, citing Mr. Thielking's services as a CPA and overall involvement with the ESOP as evidence as to his lack of independence. Respondent asks the Court to find dispositive in this case this Court's conclusion in Churchill, Ltd. Emp. Stock Ownership Plan & Tr. v. Commissioner (Churchill), T.C. Memo. 2012-300, at *24, that Mr. Thielking was not an "independent appraiser" because the Court stated that "on the basis of the administrative record, it appears that

[*23] Thielking was not independent as he was the author and preparer of most of the trust records and returns."

In Churchill, at *21-*24, the Court first found that the administrative record contained insufficient evidence as to Mr. Thielking's background, education, and experience in valuing the type of business at issue in the case even before stating that Mr. Thielking was not independent. The Court in Churchill, therefore, did not analyze section 1.170A-13(c)(iv), Income Tax Regs., excluding certain persons as "qualified appraisers", nor did it ultimately rely on its statement regarding Mr. Thielking's involvement in the plan and trust.

Here, the Court reviews the additional exhibits and testimony petitioner introduced in this case and finds that Mr. Thielking was qualified to value petitioner's stock and Essy Management's stock. Therefore, the Court must consider whether section 1.170A-13(c)(iv), Income Tax Regs., excludes persons beyond those specifically listed and finds that it does not. Section 401(a)(28)(C) provides that the term "independent appraiser" is similar to the requirements of the regulations for section 170(a)(1), which in turn define "qualified appraiser". Section 1.170A-13(c)(iv), Income Tax Regs., excludes certain persons from being appraisers because of their inherent lack of independence. Petitioner has established that Mr. Thielking was not disqualified under any of the exclusions.

**[*24]** The Court finds that petitioner has proven that the ESOP met the "independent appraiser" requirements. Therefore, the Court finds that respondent abused his discretion for purposes of this declaratory judgment proceeding by revoking the FDL on the basis of petitioner's failure to use an independent appraiser.

Plan Amendment

The FRL listed among the bases for revocation of the FDL petitioner's failure to amend the ESOP in accordance with the language required under section 414(u). In 1996 Congress amended section 414(u) to require qualified plans to include language regarding special rules for employees with "qualified military service." SBJPA sec. 1703(n), 110 Stat. at 1886. The requirements were effective for all plan years beginning after December 12, 1994. Id.

The record in this case contains an unsigned copy of a restated plan document that includes the requisite section 414(u) language, additional proposed amendments to the ESOP, and correspondence between Mr. Thielking and respondent during the FDL application process. The FDL was conditioned upon petitioner's adoption of the proposed plan document and amendments.

During the hearing, Mr. Thielking credibly testified that, to the best of his knowledge, the restated plan amendments were signed shortly after receipt of the

**[*25]** FDL and that petitioner retained the originals. Mr. Essy credibly testified that "every document * * * [Mr. Thielking] sent me I signed." Upon reviewing the amendments and restated plan document, he reiterated that he would have signed them if Mr. Thielking had sent them. Mr. Essy further explained that in either 2007 or 2008 weather damage caused the roof of petitioner's facility to fail, resulting in extensive water damage to the facility, including to documents related to petitioner and Essy Management.[20]

The Court may look beyond the administrative record to determine the facts in this matter. See supra p. 2. Given the existence of the previously approved restated plan document and amendments and the credible explanation as to the absence of executed copies in the record, the Court finds that petitioner has established that it adopted the amendments soon after June 21, 2001, upon receiving the FDL. The Court finds significant the fact that respondent did not list failure to amend the plan with respect to the section 414(u) language as a proposed ground for revocation in the April 17, 2008, Form 886-A, suggesting that there

---

[20]Additionally, a witness for respondent testified that in September 2012 several Department of Labor and IRS agents seized documents and computers from Mr. Thielking's home, home office, and business office pursuant to a search warrant. Mr. Thielking credibly testified that he was uncertain whether the purported administrative record contained all documents related to petitioner, Essy Management, and the ESOP and ESOT because he was unable to access all of his records after the computers were returned.

[*26] was evidence provided during the examination process as to the adoption of the requisite language. The absence of failure to timely amend as a ground for revocation in the April 17, 2008, Form 886-A also precluded petitioner from addressing the section 414(u) language during the appeal stage before receiving the FRL.

Respondent asks the Court to consider the Hollen and Churchill cases in which this Court held that plans were not qualified because they did not contain the section 414(u) language, but there are significant differences between the fact patterns of those cases and this case. In Hollen v. Commissioner, T.C. Memo. 2011-2, 2011 Tax Ct. Memo LEXIS 13, *7-*8, the plan adopted amendments before the expiration of the remedial period, but the amendment was not effective for all required years. In Churchill, at *10-*11, the plan adopted the required amendments but only for the plan years going forward. Because the amendments were not effective for all required years, the plan did not qualify under section 401(a).

Here, because of the resolution allowing petitioner's board of directors to amend the ESOP retroactively to its effective date and the fact that the proposed amendments were previously approved during the FDL process, the only issue for consideration is whether the amendments to the ESOP were adopted. Respondent

**[*27]** does not question the sufficiency of the section 414(u) language contained in the restated plan document but instead argues that the document was never adopted. Because the Court finds the restated plan document and amendments were adopted shortly after petitioner received the FDL, the Court finds that respondent abused his discretion for purposes of this declaratory judgment proceeding by determining that the plan had not been timely amended for required language under section 414(u).

The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.