T.C. Memo. 2016-10

UNITED STATES TAX COURT

FAMILY CHIROPRACTIC SPORTS INJURY & REHAB CLINIC, INC.,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29613-13R.                    Filed January 19, 2016.

Richard W. Leavitt (an officer) and Mark Eldridge (trustee), for petitioner.

Shawn P. Nowlan, for respondent.

MEMORANDUM OPINION

DAWSON, Judge:  In this declaratory judgment proceeding under section

7476[1] petitioner challenges respondent's September 16, 2013, final revocation

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the period under consideration, and all Rule references

(continued...)

**[*2]** letter determining that for its plan year ending June 30, 2003, and its subsequent plan years, the Family Chiropractic Sports Injury & Rehab Clinic, Inc. Employee Stock Ownership Plan (ESOP or plan) was not qualified under section 401(a) and that the related trust was not exempt from taxation under section 501(a). On brief respondent has limited his position to relying solely on the ESOP's qualification for its plan year ending June 30, 2010 (2010 plan year), and subsequent plan years.[2]

The issue before us is whether there was an abuse of discretion in respondent's determination. To decide that question, we consider whether for its 2010 plan year and subsequent plan years the ESOP: (1) failed in operation to satisfy the antialienation requirements of section 401(a)(13) and section 1.401(a)-

---

[1](...continued)
are to the Tax Court Rules of Practice and Procedure.

[2]Respondent's opening brief provides the following explanation:

The Certified Administrative Record contains references to several other potential failures under I.R.C. sec. 401(a) that potentially afflicted the ESOP in various plan years.

The respondent has written this brief to highlight and rely upon the strongest and most unambiguous of these failures, and does not now intend to argue about ESOP qualification in tax and/or plan years other than the year ending June 30, 2010. Any other matters discussed in the Certified Administrative Record are deemed waived by the respondent.

**[\*3]** 13(b), Income Tax Regs. (when it transferred a participant's fully vested plan benefits) and (2) failed to follow its plan document in operation as required by section 1.401-1(a)(2) and (b)(3), Income Tax Regs. (when it transferred a participant's fully vested plan benefits). As explained hereinafter, we conclude that there was no abuse of discretion in respondent's determination.

## Background

The parties filed a joint motion to submit this case for decision under Rule 122. We granted the motion and decide this case on the basis of the pleadings and the administrative record. See Rule 217(b)(2). We incorporate the administrative record herein.

Family Chiropractic Sports Injury & Rehab Clinic, Inc., and the ESOP

Richard W. Leavitt (Richard) is a chiropractor. He married Heidi J. Westra Leavitt (Heidi) on September 8, 1995. On October 21, 1999, Richard: (1) incorporated Family Chiropractic Sports Injury & Rehab Clinic, Inc. (Family Chiropractic), which elected to be taxed as an S corporation,[3] in Iowa and

---

[3]Family Chiropractic terminated the small business corporation election effective July 1, 2005, becoming a "C" corporation.

[*4] (2) established Family Chiropractic's ESOP.[4]  Both Family Chiropractic and the ESOP operate on a fiscal year ending June 30.

When it filed its timely petition, Family Chiropractic's principal place of business was in Iowa.

Richard and Heidi were full-time Family Chiropractic employees and were the ESOP's sole participants.  Richard was Family Chiropractic's president, and Heidi was its director, vice president, and secretary.[5]

Under its articles of incorporation, Family Chiropractic is authorized to issue two classes of common stock, class A and class B.  Class A and class B shareholders have equal voting rights, and both classes of stock have a par value of $10 per share.  Heidi and Richard jointly held one share of class A stock.  As of June 30, 2009, the individual separate ESOP accounts of Heidi and Richard each held 14.95 shares of class B stock.

Plan Provisions

Family Chiropractic created the ESOP, designed to invest primarily in Family Chiropractic's qualified securities, for the benefit of its employees.  Since

---

[4]The trust agreement for the ESOP was later amended effective July 1, 2005.

[5]Initially Heidi Westra Leavitt was the ESOP's trustee.  On December 27, 2005, Ryan Eldridge became the ESOP's trustee.  On July 1, 2008, Mark Eldridge became the ESOP's trustee.

**[*5]** the inception of the plan in 1999, the only asset in the ESOP has been Family Chiropractic's stock.  The applicable provisions in the plan document are as follows:

7.4  DETERMINATION OF BENEFITS UPON TERMINATION

(a)  If a Participant's employment with the Employer is terminated for any reason other than death or retirement, then such Participant shall be entitled to such benefits as are provided hereinafter pursuant to this Section 7.4.

If a portion of a Participant's Account is forfeited, Company Stock allocated to the Participant's Company Stock Account must be forfeited only after the Participant's Other Investments Account has been depleted. * * *

Distribution of the funds due to a Terminated Participant shall be made on the occurrence of an event which would result in the distribution had the Terminated Participant remained in the employ of the Employer (upon the Participant's death or Normal Retirement).  However, at the election of the Participant, the Administrator shall direct the Trustee that the entire Vested portion of the Terminated Participant's Account to be payable to such Terminated Participant as soon as administratively feasible after termination or employment. * * *

(b) The Vested portion of any Participant's Account shall be a percentage of the total amount credited to the Participant's Account determined on the basis of the Participant's number of Years of Service according to the following schedule:

**[\*6]**                              Vesting Schedule

| Years of Service | Percentage |
|---|---|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 | 100% |

\*         \*         \*         \*         \*         \*         \*

(e)  A Participant with at least (3) Years of Service as of the expiration date of the election period may elect to have the nonforfeitable percentage computed under the Plan without regard to such amendment and restatement.  If a Participant fails to make such election, then such Participant shall be subject to the new vesting schedule.  The Participant's election period shall commence on the adoption date of the amendment and shall end 60 days after the latest of:

(1) the adoption date of the amendment,

(2) the effective date of the amendment, or

(3) the date the Participant receives written notice of the amendment from the Employer or Administrator. \* \* \*

7.5  DISTRIBUTION OF BENEFITS

(a)  The Administrator, pursuant to the election of the Participant, shall direct the Trustee to distribute to a Participant or such Participant's Beneficiary any amount to which the Participant is entitled under the Plan in one or more of the following methods:

(1)  One lump-sum payment.

**[\*7]**      (2)  Payments over a period certain in monthly, quarterly, semiannual, or annual installments.  The period over which such payment is to be made shall not extend beyond the earlier of the Participant's life expectancy * * *.

\*      \*      \*      \*      \*      \*      \*

11.2 ALIENATION

(a)  Subject to the exceptions provided below, and as otherwise permitted by the Code and Act, no benefit which shall be payable out of the Trust Fund to any person (including a Participant or the Participant's Beneficiary) shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, or charge the same shall be void; and no such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements, or torts of any such person, nor shall it be subject to attachment or legal process for or against such person, and the same shall not be recognized by the Trustee, except to such extent as may be required by law.

(b) Subsection (a) shall not apply to a "qualified domestic relations order" defined in Code Section 414(p), and those other domestic relations orders permitted to be so treated by the Administrator under the provisions of the Retirement Equity Act of 1984.  The Administrator shall establish a written procedure to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders.  Further, to the extent provided under a "qualified domestic relations order," a former spouse of a Participant shall be treated as the spouse or surviving spouse for all purposes under the Plan.

On June 12, 2003, the Internal Revenue Service sent a favorable determination letter regarding the ESOP.

**[*8]** <u>Divorce and Reallocation of ESOP Shares</u>

On April 5, 2007, Richard and Heidi divorced. Pursuant to the final divorce decree filed in the Seventh Judicial District Court, County of Muscatine, State of Iowa, each was awarded 50% of Family Chiropractic's shares of stock, ownership, and management.[6] The decree is silent as to the ESOP.

As reflected in several corporate documents, on May 27, 2009, Heidi agreed to "relinquish her retirement value" in the ESOP "in accordance with the divorce decree" and resigned as Family Chiropractic's director, vice president, and secretary. As of June 30, 2009, the ESOP's summary of participant accounts reflected that each ESOP account of Heidi and Richard included 14.95 class B stock shares at a total value of $286,904.53 and that all the shares were 100% vested.[7] Heidi's ESOP shares were subsequently reallocated to Richard's account, as recorded in the June 30, 2010, report, rendering her account with zero shares

---

[6]The divorce decree states in relevant part:

9. <u>Family Chiropractic Sports Injury and Rehab Clinic, P.C.</u> Heidi Westra Leavitt is awarded 50% of the shares of stock, ownership and management of Family Chiropractic Sports Injury and Rehab Clinic, P.C., and Richard Leavitt is awarded 50% of the shares of stock, ownership and management of Family Chiropractic Sports Injury and Rehab Clinic, P.C.

[7]Heidi's completion of more than six years of service rendered her 100% vested pursuant to the plan.

**[*9]** 0% vested.  The June 30, 2010, report reflects that Richard had a $482,851.13[8] account balance with 29.9 class B stock shares.  During its 2010 plan year the ESOP did not distribute any assets to Heidi.

Family Chiropractic employed Heidi from its incorporation until June 27, 2009.  Richard continued working for Family Chiropractic after Heidi's resignation.

<u>Final Revocation Letter</u>

On September 16, 2013, respondent issued a final revocation letter, Letter 1757, which revoked the favorable determination letter of June 12, 2003.  The explanation of revocation, which accompanied the final revocation letter, described three bases leading to the revocation of the ESOP's qualified status under section 401(a):  (1) the 2010 reallocation of shares from Heidi's ESOP account to Richard's ESOP account caused the ESOP to fail the section 401(a)(13) requirements for its 2010 plan year and for all subsequent plan years; (2) by transferring Heidi's ESOP benefit to Richard at her termination, the ESOP failed to follow its written terms in operation and therefore failed to be a qualified plan within the meaning of section 401(a) for its 2010 plan year and for all subsequent

---

[8]The final balance resulted from the beginning balance minus the stock value losses for the year.

**[\*10]** plan years; and (3) the ESOP violated section 401(a)(16) by exceeding the limits under section 415(c).[9]

Discussion

Section 7476(a) authorizes this Court to render the requested declaratory judgment, subject to the limitations of subsection (b). Neither party disputes that those limitations have been met in this case, and we are satisfied that we have jurisdiction over the petition. See, e.g., Efco Tool Co. v. Commissioner, 81 T.C. 976 (1983).

In this declaratory judgment proceeding we review respondent's determination that the plan was not qualified. The standard for our review was enunciated in Buzzetta Constr. Corp. v. Commissioner, 92 T.C. 641, 648 (1989), as follows:

> When reviewing discretionary administrative acts, however, this Court may not substitute its judgment for that of the Commissioner. The exercise of discretionary power will not be disturbed unless the Commissioner has abused his discretion, i.e., his determination is unreasonable, arbitrary, or capricious. Whether the Commissioner has abused his discretion is a question of fact, and petitioner's burden of proof of abuse of discretion is greater than that of the usual preponderance of the evidence. Estate of Gardner v. Commissioner, 82 T.C. 989, 1000 (1984); Oakton Distributors, Inc. v. Commissioner, 73 T.C. 182, 188 (1979).

---

[9]Respondent subsequently conceded issue (3). See supra note 2.

**[*11]** Further, "[i]n order for a plan to be qualified, both its terms and its operations must meet the statutory requirements." Id. at 646.

Respondent's determination is presumed to be correct, and the burden of proof is on Family Chiropractic. See Rule 142(a). To prevail, Family Chiropractic must prove that respondent abused his discretion. See Buzzetta Constr. Corp. v. Commissioner, 92 T.C. at 648. Family Chiropractic has failed to do so.

Section 401(a) enumerates requirements which must be met in order for a trust to be considered a qualified trust entitled to preferential tax treatment under section 501(a). See Michael C. Hollen, D.D.S., P.C. v. Commissioner, T.C. Memo. 2011-2, aff'd per curiam, 437 F. App'x 525 (8th Cir. 2011); Ronald R. Pawlak, P.C. v. Commissioner, T.C. Memo. 1995-7. Its terms and its operations must meet the statutory requirements. Buzzetta Constr. Corp. v. Commissioner, 92 T.C. at 646. If a qualified plan meets all of the section 401(a) requirements, then the plan is exempt from taxation under section 501(a). See Michael C. Hollen, D.D.S., P.C. v. Commissioner, T.C. Memo. 2011-2. We need not discuss specifically the qualification of the related trust under section 501(a) because the exemption of the trust under section 501(a) follows from the qualification of the plan under section 401(a). See id.

**[\*12]** Failure to meet one of the section 401(a) requirements disqualifies the plan. See, e.g., DNA Pro Venture, Inc. v. Commissioner, T.C. Memo. 2015-195.

A qualified plan must meet the section 401(a) requirements in both form and operation. Ludden v. Commissioner, 620 F.2d 700, 702 (9th Cir. 1980), aff'g 68 T.C. 826 (1977); sec. 1.401-1(b)(3), Income Tax Regs. A form failure occurs when a plan document does not contain required language or terms. See Michael C. Hollen, D.D.S., P.C. v. Commissioner, T.C. Memo. 2011-2. An operational failure occurs when: (1) a plan, in operation, does not meet the section 401(a) requirements, see Martin Fireproofing Profit-Sharing Plan & Tr. v. Commissioner, 92 T.C. 1173 (1989), and (2) a plan fails to follow the terms of the plan document, see Michael C. Hollen, D.D.S., P.C. v. Commissioner, T.C. Memo. 2011-2. A plan that does not follow the terms of the plan document is not a "definite written program" as required by section 1.401-1(a)(2), Income Tax Regs.

In general, a qualification failure pursuant to section 401(a) is a continuing failure because allowing a plan to requalify in subsequent years would be to allow a plan "to rise phoenix-like from the ashes of such disqualification and become qualified for that year." Pulver Roofing Co. v. Commissioner, 70 T.C. 1001, 1015 (1978); see also Martin Fireproofing Profit-Sharing Plan & Tr. v. Commissioner, 92 T.C. at 1184-1189.

**[\*13]** As explained below, the ESOP failed to satisfy the section 401(a)

requirement in two separate ways, either of which is sufficient for the plan to not

be qualified.  See secs. 401(a), 4975(e)(7).  Clearly, respondent has not abused his

discretion.

<u>Whether the ESOP Failed the Sec. 401(a)(13) Prohibition on Assignment or
Alienation of Benefits</u>

Section 401(a)(13)(A) states that "[a] trust shall not constitute a qualified

trust under this section unless the plan of which such trust is a part provides that

benefits provided under the plan may not be assigned or alienated."  <u>See also</u> sec.

1.401(a)-13(b)(1), Income Tax Regs.  "Assignment" and "alienation" include any

arrangement providing for the payment to the employer of plan benefits which

otherwise would be due the participant under the plan and any direct or indirect

arrangement (revocable or irrevocable) whereby a party acquires from a

participant or beneficiary a right or interest enforceable against the plan in all or

any part of a plan benefit payment payable to a participant or beneficiary.  <u>See</u> sec.

1.401(a)-13(c)(1), Income Tax Regs.

We clearly described the antialientation procedures under the Employee

Retirement Income Security Act of 1974 (ERISA), Pub. L. No. 93-406, 88 Stat.

**[\*14]** 829, 29 U.S.C. sec. 1001 (2006), and the Internal Revenue Code in <u>Gallade</u>

<u>v. Commissioner</u>, 106 T.C. 355, 361 (1996), as follows:

> ERISA was enacted to establish "a comprehensive federal scheme for the protection of pension plan participants and their beneficiaries." <u>American Tel. & Tel. Co. v. Merry</u>, 592 F.2d 118, 120 (2d Cir. 1979). ERISA was intended to assure that American workers "may look forward with anticipation to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society." S. Rept. 93-127, at 13 (1974), 1974-3 C.B. (Supp.) 1, 13. To this end, ERISA requires that plans provide that benefits may not be assigned or alienated. H. Rept. 93-807, at 68 (1974), 1974-3 C.B. (Supp.) 236, 303. This provision is included in both the I.R.C. and ERISA section 206(d)(1), which state that a pension plan will not be qualified if its benefits can be assigned or alienated. Sec. 401(a)(13); 29 U.S.C. sec. 1056(d)(1) (1994).

In addition, once a participant's benefit becomes vested, it is nonforfeitable

under ERISA. <u>Bd. of Trs. of the Sheet Metal Workers' Nat'l Pension Fund v.</u>

<u>Commissioner</u>, 117 T.C. 220, 228 (2001), <u>aff'd</u>, 318 F.3d 599 (4th Cir. 2003). In

sum, a participant in a section 401(a) plan may not assign or alienate his or her

benefit, and at the same time, he or she has a nonforfeitable right to that same

benefit. <u>Id.</u>

Pursuant to the May 27, 2009, corporate documents, and relying upon the

divorce decree, Heidi transferred 100% of her ESOP shares and relinquished any

rights she had under the ESOP. The ESOP's June 30, 2009 and 2010, reports

[*15] reflect that 100% of the shares allocated to Heidi on June 30, 2009, were reallocated to Richard's account as of June 30, 2010.

Before April 5, 2007, Richard and Heidi, husband and wife, were also Family Chiropractic's sole employees and ESOP participants. Although the 2007 divorce decree dissolved the Leavitt marriage, it is insufficient to allow the transfer of plan assets that transpired in this case.[10] See, e.g., Rodoni v. Commissioner, 105 T.C. 29 (1995). Transferring the vested shares from Heidi's account to Richard's caused Heidi's ESOP account to become alienated from her after it became fully vested. By violating section 401(a)(13), the plan ceased to be qualified. Accordingly, we hold that respondent did not abuse his discretion in disqualifying the ESOP for its 2010 plan year and for subsequent plan years.

Whether the ESOP Failed Section 401(a) Requirements by Violating Plan Terms in Allowing the Transfer of Vested Benefits

The ESOP plan terms were clearly violated. First, under section 7.4(a) of the plan document a terminated participant was entitled to all vested benefits in his or her account, and it was to be paid "as soon as administratively feasible" after termination of employment if the participant so elected (or otherwise upon her

---

[10]Family Chiropractic admits that the divorce decree did not address Heidi's benefits under the ESOP. Accordingly, we need not discuss sec. 414(p) qualified domestic relations orders, which are an exception to the antialienation provisions. See sec. 401(a)(13)(B).

[*16] death or what would have been her normal retirement). Pursuant to section 7.4(b) of the plan document Heidi was fully vested in her ESOP account in 2009. Section 7.5(a) of the plan document allowed her to choose the form of payment (either a lump-sum payment or periodic payments over time) she would receive. Heidi's benefits were not so distributed to her. Second, section 11.2(a) of the plan document incorporated the section 401(a)(13) prohibition on alienation or assigning benefits. Nevertheless, the ESOP transferred 100% of Heidi's $286,904.53 of vested plan assets to Richard's ESOP account in contravention of the plan document's terms.

Because the ESOP failed to abide by the document's distribution and antialienation rules, an operational failure occurred in 2010 and the ESOP was not a "definite written program" and therefore was not a section 401(a) qualified plan. Because the failure to follow the plan document's terms is a continuing one, the ESOP was also not qualified for subsequent plan years.

We hold that respondent did not abuse his discretion in determining that because the ESOP failed to follow the plan document in operation, the ESOP was not a section 401(a) qualified plan for its 2010 plan year and for all subsequent plan years.

**[*17]** <u>Conclusion</u>

We conclude that there was no abuse of discretion in respondent's determination that the plan was not qualified under section 401(a) for its 2010 plan year and its subsequent plan years and that the related trust was not exempt under section 501(a).

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.