T.C. Memo. 2020-5

UNITED STATES TAX COURT

ED THIELKING, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1870-16R.                    Filed January 9, 2020.

Michael A. Gilmer, for petitioner.

Pamela J. Sewell, David Conrad, and Shawn P. Nowlan, for respondent.

MEMORANDUM OPINION

MARVEL, Judge:  Petitioner seeks a declaratory judgment under section 7476[1] that the Ed Thielking, Inc. Employee Stock Ownership Plan (ESOP) and the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]** Ed Thielking, Inc. Employee Stock Ownership Trust (ESOT) are qualified under sections 401(a) and 501(a), respectively. Respondent determined that the ESOP and the ESOT did not qualify for the plan year ended (PYE) February 28, 2007, and for all plan years thereafter. We sustain that determination.

## Background

The parties filed a joint motion for leave to submit this case for decision under Rule 122. We granted their motion and decide this case on the basis of the pleadings and the administrative record. See Rule 217(a). We incorporate the administrative record herein.

## I.    Petitioner

Petitioner is an S corporation incorporated in Iowa on March 10, 2006. It reports its income and expenses on the basis of a fiscal year ending (FYE) February 28. At incorporation, in exchange for a $10 promissory note, petitioner issued 10 class A shares to Edmund Thielking, its sole shareholder, officer, and director. Shortly thereafter, Mr. Thielking elected his spouse, Amy Thielking, as a director and officer. Petitioner had a principal place of business in Iowa when it petitioned this Court. Petitioner was and at all times remained a privately held entity.

**[*3]**    On a date and in a manner that is not clear from the record, Mr. Thielking transferred his 50% partnership interest in Gray Thielking Electric (GTE) to petitioner.  Petitioner's primary asset during the years at issue was the 50% partnership interest in GTE.  For FYE 2007 and each subsequent year at issue, GTE issued a Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., to petitioner in accordance with its 50% partnership interest in GTE.

II.    The Plan

As part of a plan developed by Mr. Thielking's father, Stephen Thielking of Oden & Thielking, C.P.A.s, P.C. (O&T),[2] petitioner established the ESOP on March 31, 2006, with a purported effective date of March 10, 2006.[3]  Mr. Thielking, acting as petitioner's president, executed the ESOP agreement.  Petitioner also established the ESOT on March 31, 2006, again with a purported effective date of March 10, 2006.  Mrs. Thielking was named trustee of the ESOT.

---

[2]Stephen Thielking is an accountant who has featured prominently in prior cases before this Court.  See Val Lanes Recreation Ctr. Corp. v. Commissioner, T.C. Memo. 2018-92; Churchill, Ltd. Emp. Stock Ownership Plan & Tr. v. Commissioner, T.C. Memo. 2012-300; Hollen v. Commissioner, T.C. Memo. 2011-2, aff'd per curiam, 437 F. App'x. 525 (8th Cir. 2011).  This case involves an S corporation--petitioner--that Stephen Thielking established as a holding company for his son's electrical contracting business.

[3]Petitioner adopted its FYE as the PYE for the ESOP.

**[\*4]** Article 2 of the ESOP agreement states in pertinent part that participation in the ESOP begins immediately after one year of service, provided the participant is at least 21 years old on that date. In addition to the year of service, article 4 of the ESOP agreement states that employer contributions to the plan require at least 1,000 hours of service during a plan year. The ESOP agreement defines an hour of service as an hour for which an employee is paid or entitled to payment by the employer.

Further, article 4 of the ESOP agreement incorporates the limitations under section 415(e). With regards to distributions, article 14 of the ESOP agreement states in pertinent part:

> If distribution has begun on or before the Required Beginning Date and if the Participant dies before his entire Accrued Benefit has been distributed to him the remaining portion of his Accrued Benefit which is not payable to a beneficiary designated by the Participant's will shall be distributed within five years after the Participant's death or over the life of the beneficiary or over a period certain not extending beyond the life expectancy of the beneficiary, commencing not later than the end of the calendar year following the calendar year in which the Participant would have attained the age 70 ½.

The record contains no restatements or amendments to either the ESOP or the ESOT agreements, despite respondent's repeated requests for those documents on January 28, 2010, October 26, 2011, and January 31, 2012.

**[\*5]** III.     Plan Contributions

Petitioner's primary source of income in FYE 2007 was an income allocation from GTE.  Petitioner did not report any compensation of officers or salaries and wages as deductible expenses.  Nothing in the record indicates that petitioner filed employment and unemployment tax returns, or that it issued and filed Forms W-2, Wage and Tax Statement, or Forms 1099-MISC, Miscellaneous Income, for FYE 2007.

In FYE 2007 petitioner's board of directors resolved to issue a dividend payable in capital stock to the participants of the ESOP or at their election to their ESOT accounts.  The only plan participant, Mr. Thielking, elected for petitioner to contribute the dividend to his ESOT account.  Petitioner claimed a deduction with respect to the ESOT contribution, which largely offset the income allocation to it from GTE.  With no material variance, petitioner followed this course of action for all the years at issue.  Petitioner issued share certificates representing the following class B capital stock dividends to Mrs. Thielking, as trustee for the ESOT:

[*6]

| FYE 2/28 | Quantity |
|---|---|
| 2007 | 23,000 |
| 2008 | 20,800 |
| 2009 | 6,550 |
| 2010 | 700 |
| 2011 | 3,700 |

The only other contribution occurred on or about November 6, 2007, when the ESOT received a purported rollover contribution of $15,634 from a section 401(k) account of Mrs. Thielking. Petitioner's board of directors authorized the purchase by the ESOT of an additional 15,635 class B shares with the funds contributed in the section 401(k) rollover.[4]

IV.   Plan Reporting

Petitioner reported on Form 5500, Annual Return/Report of Employee Benefit Plan, for PYE February 28, 2007, only one participant, Mr. Thielking. Mr. Thielking's account consisted of 23,000 shares of petitioner's stock. Stephen Thielking prepared a written appraisal that valued each share of petitioner's stock at $1, resulting in a valuation of $23,000 for Mr. Thielking's ESOT account. The

---

[4]The board minutes indicate the meeting took place on November 6, 2006, but the rollover check is dated November 6, 2007. We assume that the meeting actually took place on November 6, 2007.

[*7] appraisal, however, did not include Stephen Thielking's signature or his qualifications as an appraiser.

Petitioner also reported Mr. Thielking as the only participant in the ESOP[5] on Form 5500 for PYE February 28, 2008. The plan received a rollover contribution on behalf of Mrs. Thielking during PYE February 28, 2008, even though she was not reported as a plan participant for that period. The plan reported total assets of 59,434 shares of petitioner's stock. Again, Stephen Thielking valued each share at $1, resulting in a net plan asset value of $59,434, but he again failed to sign the appraisal or include his qualifications.

Petitioner finally reported a second participant for the first time, Mrs. Thielking, on its Form 5500 for PYE February 28, 2009. Once again petitioner relied on an unsigned appraisal prepared by Stephen Thielking, valuing the 66,234 shares of petitioner held by the ESOT at $1 each, or $66,234.

The record does not include Forms 5500 or appraisals for PYE February 28, 2010, or any subsequent years.

---

[5]In a summary annual report for PYE February 28, 2008, petitioner indicated the plan had two participants. In the Form 5500 for PYE February 28, 2008, however, petitioner indicated the plan had only one participant.

**[\*8]**                                    <u>Discussion</u>

Section 7476(a) authorizes this Court to render a declaratory judgment relating to the qualification of a retirement plan, subject to the limitations in section 7476(b).  Neither party contends that any of those limitations apply, and we are satisfied that we have jurisdiction over the petition.

Respondent determined that the ESOP and the ESOT failed to qualify under sections 401(a) and 501(a), respectively, because the ESOP had both operational and form failures.  Respondent determined that the operational failures included: (1) allowing ineligible individuals to participate in the plan, (2) accepting contributions in excess of the limitations imposed by sections 401(a)(16) and 415(c)(1), and (3) failing to have an independent appraiser value employer securities as required by section 401(a)(28)(C).  Respondent determined that the plan failed to qualify in form because it did not conform to certain statutory and regulatory requirements, and petitioner did not adopt timely amendments as permitted by section 401(b).

Respondent's determination to disqualify the plan is presumed correct, and petitioner bears the burden of proving that respondent abused his discretion in doing so.  See Rule 142(a); <u>Oakton Distribs. Inc. v. Commissioner</u>, 73 T.C. 182, 188 (1979).  To satisfy its burden of proof, petitioner must persuade the Court that

**[*9]** respondent's determination was unreasonable, arbitrary, or capricious. See Buzzetta Constr. Corp. v. Commissioner, 92 T.C. 641, 648 (1989). Petitioner has failed to do so.

Before we reach the merits of respondent's determination to disqualify the plan, we must address petitioner's contention that respondent "erred in issuing its revocation letter because the statute of limitations has run with respect to one or more of the plan years at issue." Petitioner's limitations contention is misplaced. Section 6501(a) limits only the assessment and collection of tax; it does not limit respondent's broad authority to audit retirement plans and, if appropriate, to issue a final nonqualification letter. The period of limitations prescribed by section 6501(a), therefore, does not apply to proceedings under section 7476 or to respondent's determinations regarding the qualification of retirement plans under section 401(a), as they do not involve the imposition of any tax. Christy & Swan Profit Sharing Plan v. Commissioner, T.C. Memo. 2011-62, 2011 WL 913190, at *3. Accordingly, respondent's determination to disqualify the ESOP is not barred by any period of limitations set forth in section 6501.

We turn then to the merits. Section 401(a) lists requirements that must be met for a plan and its underlying trust to qualify for preferential tax treatment under section 501(a). A plan must meet the section 401(a) requirements in both

[*10] form and operation. Ludden v. Commissioner, 620 F.2d 700, 702 (9th Cir. 1980), aff'g 68 T.C. 826 (1977); sec. 1.401-1(b)(3), Income Tax Regs. In addition, the terms of the plan must be in writing. Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, sec. 402(a)(1), 88 Stat. at 875; see also sec. 1.401-1(a)(2), Income Tax Regs. Congress established the writing requirement so that every employee, on examining the plan document, may determine exactly what his or her rights and obligations are under the plan and who is responsible for operating the plan. See Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995); H.R. Conf. Rept. No. 93-1280, at 297 (1974), 1974-3 C.B. 415, 458.

A qualification failure pursuant to section 401(a) is a continuing failure because allowing a plan to requalify in subsequent years would allow a plan "to rise phoenix-like from the ashes of such disqualification and become qualified for that year." Pulver Roofing Co. v. Commissioner, 70 T.C. 1001, 1015 (1978). For this reason we focus our analysis primarily on failures affecting the ESOP's qualification under section 401(a) for PYE February 28, 2007. We do not specifically discuss the qualification of the ESOT because the exemption of the ESOT under section 501(a) follows from the qualification of the ESOP under section 401(a).

**[\*11]** 1.    <u>Operational Failures</u>

In making a determination of a plan's qualification under section 401(a) the plan's operation is as relevant as its terms. <u>Winger's Dep't Store, Inc. v. Commissioner</u>, 82 T.C. 869, 876 (1984); sec. 1.401-1(b)(3), Income Tax Regs. An operational failure occurs when the operation of a plan fails to meet the requirements of section 401(a) or comply with the terms of the plan document. <u>See, e.g.</u>, <u>Hollen v. Commissioner</u>, T.C. Memo. 2011-2, 2011 WL 13637, at \*3-\*4 (finding that a plan failed to qualify because it did not adhere to its own vesting schedule), <u>aff'd per curiam</u>, 437 F. App'x 525 (8th Cir. 2011). We now address the operational failures respondent identified.

    a.    <u>Ineligible Individuals Permitted To Participate in the Plan</u>

Respondent determined that petitioner caused an operational failure by admitting participants who had not met the ESOP's criteria for eligibility. Petitioner challenges this finding without pointing to any evidence in the record supporting its contention.

Eligibility to participate in the ESOP began "<u>immediately</u> after one year of service". Eligibility for contributions also required the purported participant to complete at least 1,000 hours of service within the plan year. Petitioner was

[*12] incorporated on March 10, 2006, and reported Mr. Thielking as a plan participant on its Form 5500 for PYE February, 28, 2007.

Petitioner had not been incorporated for one full year when it reported Mr. Thielking as a plan participant; therefore, it is impossible for Mr. Thielking to have attained a year of service as of February 28, 2007. Moreover, the record contains no credible evidence establishing that Mr. Thielking performed services for petitioner that met the 1,000 hours of service requirement. The ESOP agreement defines an hour of service as each hour for which an employee is paid for the performance of duties. Petitioner did not report as deductions either officer compensation or salaries and wages for FYE February 28, 2007, and failed to otherwise provide any evidence that it compensated Mr. Thielking for any duties performed for petitioner. Because Mr. Thielking failed both prongs of the test for eligibility, his admission as a plan participant in PYE February 28, 2007, created an operational failure.

Additionally, the ESOT accepted a rollover contribution from Mrs. Thielking during PYE February 28, 2008, but petitioner did not report Mrs. Thielking as a participant until PYE February 28, 2009. Because Mrs. Thielking was not a participant when the ESOT accepted the rollover contribution, an operational failure occurred.

[*13] We are not persuaded by petitioner's perfunctory contention that both Mr. and Mrs. Thielking performed substantial services for petitioner and were compensated in the form of yearend bonuses only if circumstances permitted. In the absence of any credible evidence in the record of the services performed or any material yearend bonuses paid in PYE February 28, 2007, we conclude that neither individual performed the requisite 1,000 hours of service.

b.     Excess Contributions Under Sections 401(a)(16) and 415(c)

Respondent determined that petitioner, in operating the ESOP, exceeded the contribution limits under sections 401(a)(16) and 415(c) for PYE February 28, 2007. Petitioner contends that the dividend paid to the ESOT represented compensation for services rendered by Mr. Thielking. We find this contention unconvincing given the complete lack of evidence of any services rendered by Mr. Thielking.

Employee stock option plan contributions and other additions with respect to a participant are limited to the lesser of $40,000 (adjusted for inflation, see sec. 415(d)) or 100% of the participant's compensation. Secs. 401(a)(16), 415(c)(1). As mentioned above, petitioner did not claim as deductions either officer compensation or salaries and wages for FYE February 28, 2007. See sec. 415(c)(3). Additionally, it failed to provide any evidence that Mr. Thielking

[*14] performed any duties for petitioner. Consequently, Mr. Thielking's contribution limit for PYE February 28, 2007, was zero.

Because petitioner contributed[6] property with an alleged value of $23,000 to the ESOT for the account of Mr. Thielking, it exceeded the contribution limit under sections 401(a)(16) and 415(c). This excess contribution constitutes an operational failure for PYE February 28, 2007.

      c.      Failure To Satisfy the Independent Appraiser Requirement

Respondent determined that petitioner's ESOP failed to satisfy the independent appraiser requirement of section 401(a)(28)(C). Petitioner contends that: (1) Stephen Thielking was an independent appraiser, (2) the doctrine of substantial compliance applies, and (3) this Court in Val Lanes Recreation Ctr. Corp. v. Commissioner, T.C. Memo. 2018-92, already found Stephen Thielking to be an independent appraiser. For the reasons that follow, we conclude that Stephen Thielking was not an independent appraiser with respect to petitioner's stock.

In the case of an employee stock ownership plan and its corresponding trust, all employer securities which are not readily tradable on an established securities

_____

[6]Under sec. 402(e)(3) a contribution made by the employer to a trust pursuant to an election by the participant shall not be treated as an employee contribution.

[*15] market must be valued by an independent appraiser. Sec. 401(a)(28)(C). Petitioner's stock is not traded on an established securities market, and so the ESOT's holdings of that stock required a valuation by an independent appraiser.

An "independent appraiser" means any appraiser meeting the requirements of a "qualified appraiser" under the section 170(a)(1) regulations. Sec. 401(a)(28)(C). The regulations provide a list of persons who cannot serve as a "qualified appraiser". Sec. 1.170A-13(c)(5)(i)(C), Income Tax Regs. Specifically, the regulations exclude the donor of the property, any party to the transaction in which the donor acquired the property, and the donee of the property from the list of persons eligible to serve as "qualified appraisers". Sec. 1.170A-13(c)(5)(iv)(A), (B), and (C), Income Tax Regs. Any person related to any of the above within the meaning of section 267(b) is also excluded as a qualified appraiser (the constructive ownership rules of section 267(c) apply to this determination). See sec. 267(c); sec. 1.170A-13(c)(5)(iv)(E), Income Tax Regs.

Under section 267(c), stock owned by a trust is considered owned proportionately by its beneficiaries. Sec. 267(c)(1). Stock owned by an individual is constructively owned by his family members, including ancestors and lineal descendants. Sec. 267(c)(2), (4). Finally, stock owned by a corporation is

**[\*16]** considered owned by any individual owning more than 50% of the stock of the corporation. Sec. 267(b)(2).

As a starting point, petitioner, the donor of the property, is an excluded person. Mr. Thielking, as the sole beneficiary of the ESOT (in PYE February 28, 2007), constructively owned all of petitioner's stock. See sec. 267(c)(1). Stephen Thielking, as Mr. Thielking's father, constructively owns all the stock of petitioner that his son owns. See sec. 267(c)(2), (4). Because Stephen Thielking constructively owns more than 50% of petitioner, he is a related person and is not an independent appraiser.

In addition to the independence requirement the regulations impose certain collateral requirements: (1) the appraisal must include a declaration that the individual holds himself out to the public as an appraiser and (2) the qualified appraiser who signs the appraisal must list his or her background, experience, education, and membership, if any, in professional appraisal associations. Sec. 1.170A-13(c)(5)(i)(A) and (B), Income Tax Regs. The appraisal letters covering PYE February 28, 2007, through PYE February 28, 2009, state that "[t]he undersigned holds himself out to be an appraiser." However, because there is no signature below that statement or elsewhere on the letters, the appraisals fail the first collateral requirement. See Hollen v. Commissioner, 2011 WL 13637, at \*4;

**[*17]** see also K.H. Co., LLC Emp. Stock Ownership Plan v. Commissioner, T.C. Memo. 2014-31, at *27-*32. The appraisals fail the second collateral requirement because Stephen Thielking did not list his qualifications. See Churchill, Ltd. Emp. Stock Ownership Plan & Tr. v. Commissioner, T.C. Memo. 2012-300, at *20-*23.

Petitioner contends that the substantial compliance doctrine applies to excuse both the independence and collateral requirement failures. The doctrine of substantial compliance generally applies only when the requirement is procedural or directory and does not relate to the essence of the statute. Taylor v. Commissioner, 67 T.C. 1071, 1077-1078 (1977). Petitioner relies on Bond v. Commissioner, 100 T.C. 32 (1993), where the Court found the regulations under section 170(a) are directory and not mandatory with respect to the section 170 statutory purpose. In Bond the Court did not, however, address the independence requirement of section 401(a)(28)(C). We conclude that the independence requirement of section 1.170A-13(c)(5)(iv), Income Tax Regs., which bars certain related people from serving as qualified appraisers, relates to the essence of section 401(a)(28)(C)--therefore the doctrine of substantial compliance cannot excuse the independence requirement.

Petitioner's reliance on Bond with respect to the collateral requirements is also misplaced. While in Bond v. Commissioner, 100 T.C. at 41, the Court did

**[*18]** excuse a failure to include the appraiser's qualifications with the appraisal, the taxpayer promptly provided the information at the administrative level and it was included in the record. The record here does not include any information from which we could assess Stephen Thielking's qualifications. Bond is distinguishable.

Finally, petitioner contends that, in Val Lanes Recreation Ctr. Corp. v. Commissioner, at *23-*24, this Court previously found that Stephen Thielking was an independent appraiser. But see Churchill, Ltd. Emp. Stock Ownership Plan & Tr. v. Commissioner, at *24-*25 (finding that Stephen Thielking was not an independent appraiser because, inter alia, he failed to sign the appraisals and include his qualifications). Val Lanes, however, is distinguishable on multiple grounds. First, Stephen Thielking had no familial relationship with the primary beneficiary of the employee stock option plan in Val Lanes. Second, while the appraisals in the record did not include a signature, the Court there found on the basis of credible testimony--absent here--that signed appraisals were in fact provided to the Department of Labor. In contrast, here, Stephen Thielking valued stock beneficially owned by his son, and nothing in the record indicates that the appraisals were ever signed.

**[\*19]** Because Stephen Thielking's appraisal did not satisfy the independence and collateral requirements of section 1.170A-13(c)(5)(i)(A), (B), and (C), Income Tax Regs., we conclude that petitioner's stock held by the ESOP was not valued by an "independent appraiser", and we hold that the ESOP fails to meet the requirements of section 401(a)(28)(C).

Although these operational failures alone are sufficient for us to uphold respondent's determination, we nonetheless address the form failures respondent determined.

2.    Form Failures

A plan must be continually amended to comport with subsequent changes to the requirements under section 401(a).  Ronald R. Pawlak, P.C. v. Commissioner, T.C. Memo. 1995-7, 1995 WL 7510, at \*5.  "A form failure occurs when a plan document does not contain required language or terms."  Family Chiropractic Sports Injury & Rehab Clinic, Inc. v. Commissioner, T.C. Memo. 2016-10, at \*12. A form failure may result from a statutory or regulatory change that renders the existing plan terms deficient.  Sec. 1.401(b)-1(b)(3)(i), Income Tax Regs.  The Commissioner, at his discretion, may designate a provision that fails to conform to a change in the law as a disqualifying provision.  Id.  Lastly, a plan may retroactively qualify under section 401(a) if remedial amendments are made during

**[*20]** the remedial amendment period with respect to each statutory or regulatory change. Sec. 401(b); sec. 1.401(b)-1(d), Income Tax Regs.

Because the record contains no amendments to the ESOP agreement, we conclude that petitioner never amended the plan and consequently do not address remedial amendments under section 401(b). We turn instead to an analysis of the ESOP's form failures.

a. Small Business Job Protection Act of 1996

Congress repealed section 415(e) for plan years beginning after December 31, 1999. Small Business Job Protection Act of 1996, Pub. L. No. 104-188, sec. 1452(a), (d)(1), 110 Stat. at 1816. The Commissioner designated any provision that failed to reflect the repeal of section 415(e) as a disqualifying provision under section 1.401(b)-1(b), Income Tax Regs. Rev. Proc. 99-23, sec. 4, 1999-1 C.B. 920, 923. Because the ESOP agreement incorporates section 415(e) by reference in article 4, article 4 is a disqualifying provision.

b. Economic Growth and Tax Relief Reconciliation Act of 2001

Congress made certain changes to the definitions of "key employee" and "top-heavy plan" under section 416(i)(1) and (g), respectively. Economic Growth and Tax Relief Reconciliation Act of 2001 (EGTRRA), Pub. L. No. 107-16, sec. 613(a), (d), 115 Stat. at 100, 101. The changes were effective for plan years

**[*21]** beginning after December 31, 2001.  EGTRRA sec. 613(f), 115 Stat. at 102.
The Commissioner designated any provisions that fail to satisfy the qualification
requirements due to the EGTRRA changes as disqualifying provisions.  Notice
2001-42, sec. III, 2001-2 C.B. 70, 71; see also sec. 401(a)(10)(B).

With respect to the definition of a key employee, EGTRRA:  (1) eliminated
a four year look-back provision; (2) changed the salary threshold for an officer to
be considered a key employee from 50% of the amount in effect under section
145(b)(1)(A) to $130,000; and (3) eliminated the largest interests test in section
416(i)(1)(A)(ii).  EGTRRA sec. 613(a).  Petitioner failed to incorporate these
changes into the definition of a key employee in the ESOP agreement.

With respect to the definition of a top-heavy plan, EGTRRA reduced the
five year look-back period under section 416(g)(4)(E) to one year.  EGTRRA sec.
613(c)(2).  Petitioner failed to incorporate this change into the top-heavy plan
definition in the ESOP agreement.

The ESOP agreement's definitions of "key employee" and "top-heavy plan"
are disqualifying provisions.

c.  Final Regulations:  Section 401(a)(9)

In general, plan documents must be amended to the extent necessary to
comply with the requirements of the final regulations under section 401(a)(9) by

**[\*22]** the end of the first plan year beginning after January 1, 2003. Rev. Proc. 2002-29, sec. 3.01, 2002-1 C.B. 1176, 1177. By way of example, the ESOP agreement does not provide for the correct distribution rules should a participant die after distributions have begun but before his entire interest has been distributed. Section 401(a)(9)(B)(i) specifies that the remaining interest must be distributed at least as rapidly as under the method of distribution being used as of the date of death. The ESOP agreement incorrectly allows for distributions over the life of the beneficiary. It also includes outdated references to the proposed regulations under section 401(a)(9) and makes no mention of the final regulations. Both of these are disqualifying provisions.

        d.      <u>Petitioner's Contentions</u>

Petitioner contends that the plan document had no form failures because: (1) the IRS issued a favorable determination letter with respect to another taxpayer's identical plan, (2) the plan was amended as required, and (3) the Department of Labor and the IRS seized the ESOP's records from its accountant. We do not find any of these arguments convincing.

Under section 6110(k)(3), determination letters may not be used or cited as precedent, and this Court has refused to consider determination letters proffered by taxpayers. See <u>Derby v. Commissioner</u>, T.C. Memo. 2008-45, 2008 WL

**[*23]** 540271, at *20 (concluding that a taxpayer could not rely on a determination letter issued to another taxpayer); see also Reserve Mech. Corp. v. Commissioner, T.C. Memo. 2018-86, at *49 (refusing to consider 39 determination letters because they cannot be used as precedent under section 6110(k)(3)). Consistent with section 6110(k)(3) and our precedent, petitioner cannot rely on a determination letter issued to a different taxpayer. Moreover, petitioner has failed to actually identify the determination letter on which it attempts to rely; even if it had identified it, petitioner failed to provide any evidence that both plans were identical.

Petitioner contends that it amended the ESOP agreement as required. Petitioner stated that it failed to provide respondent with the amendments because respondent did not request them and later because the Government seized its accountant's records. These contentions are unsupported by the record. First, the plan documents and all amendments were repeatedly requested on at least three occasions--January 28, 2010, October 26, 2011, and January 31, 2012. Second, O&T's records were not seized until September 12, 2012, months after the third request for the amendments. Finally, a taxpayer has a responsibility under section 6001 to maintain adequate records. Petitioner's reliance on its accountant to

[*24] maintain records does not relieve it of its responsibility to maintain its own records.

3.    Conclusion

Because of the operational and form failures set forth above, we find no abuse of discretion in respondent's determination that the plan does not qualify under section 401(a) for PYE February 28, 2007, and because it is a continuing failure, all subsequent plan years.  See, e.g., Martin Fireproofing Profit Sharing Plan & Tr. v. Commissioner, 92 T.C. 1173, 1184 (1989).  We sustain respondent's determination that the ESOP and the ESOT were disqualified for the 2007 plan year and for all plan years thereafter.  We have considered all arguments made by petitioner for holdings contrary to those expressed herein and reject these arguments not discussed herein as irrelevant or without merit.

To reflect the foregoing,

Decision will be entered for respondent.